ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
OCT 18 2005
U.S. COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **WEST COAST CONTRACTORS OF NEVADA, INC.**<br>**7785 White Fir Street**<br>**Reno, NV 89523**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**UNITED STATES OF AMERICA,**<br><br>**Defendant.** | ) | 05-1121C<br>**No.** ______ |

**COMPLAINT**

For its complaint against the United States of America, Plaintiff West Coast Contractors of Nevada, Inc. alleges as follows:

**Parties**

1. West Coast Contractors of Nevada, Inc. ("West Coast") is a corporation organized pursuant to the laws of the State of Nevada with a principal place of business at 7785 White Fir Street, Reno Nevada, 89523.

2. Defendant, the United States of America, acted through the United States Department of the Navy (the "Navy").

**Jurisdiction**

3. This Court has jurisdiction to entertain this action pursuant to 28 U.S.C. § 1491 (a)(1), 41 U.S.C. § 605 (c)(5) and 41 U.S.C. § 609 (a)(1)(3).

## Nature of the Action

4. This is an action for money damages for the Navy's breach of a contract with West Coast for the construction of an extension to Building 245 of the Naval Post Graduate School in Monterey, California (the "Project"). The Navy caused West Coast to incur $756,654.62 in damages arising from: (1) work the Navy required West Coast to perform that was outside the scope of the contract and for which the Navy refused to increase the contract price; (2) delay caused by the Navy's actions and inactions; and (3) improperly assessed liquidated damages.

## Statement of Facts

### A. West Coast Contracts with the Navy and Performed Pursuant to the Contract

5. West Coast entered into a design-build contract with the Navy, Contract No. N62474-00-C-3035, (the "Contract") for construction of the Project.

6. West Coast fully performed its obligations pursuant to the Contract. As explained below, the Navy: (i) required West Coast to perform work outside the scope of the Project and for which the Navy refused to adjust the Contract price; (2) caused West Coast to incur delay damages and (3) improperly assessed liquidated damages. As a result, West Coast has incurred $756,654.62 in damages.

### B. Equitable Adjustments

#### 1. Paving

7. Through Proposed Change Order #8, dated February 7, 2002, the Navy altered the paving and landscaping requirements for the Project.

8. The new sketch attached to Proposed Change Order #8 required West Coast, inter alia, to accommodate an 80-foot setback that was not shown on the original drawings.

9. As a result, West Coast was required to incur $15,891.28 in additional design costs and $57,575.08 in additional labor and materials, for a total of $73,466.36.

**2. Mechanical Equipment**

10. The RFP drawings expressly designated a 15-ton chiller and a 6500 CFM air-handling unit.

11. West Coast reasonably relied upon this designation when bidding the Project.

12. In order to meet the Navy's actual requirements, however, a 40-ton chiller and a 14,000 CFM air-handling unit were required, which the Navy directed to be installed without adjustment in the contract price.

13. West Coast incurred an additional $114,989.08 in labor and materials as a result of this error in the Navy's bid documents.

**3. Change in Grade Beam Elevations**

14. The RFP drawings show the exterior wall grade beam and pile caps to be one foot below the first floor top-of-slab.

15. West Coast reasonably relied upon these drawings in preparing its bid.

16. After award, it was discovered that the Navy's drawings were erroneous and substantial re-design was necessary to change the elevation to three feet below the slab with the exception of one grid area.

17. These elevation changes significantly impacted design and construction costs and required West Coast to incur additional labor, materials and design costs of $170,797.54.

4. **Relocation of Fire Riser**

18. The drawings upon which West Coast formulated its bid do not show the fire alarm riser that existed in the breezeway between the existing building and the Project.

19. As a result, West Coast had to incur $6,375.22 in additional labor, materials and overhead to relocate the fire alarm riser.

5. **Increased Design Costs**

20. The Contract required West Coast to submit its design to the Navy for review at 100 percent completion.

21. Pursuant to Sections 1.4 and 1.7 of the specifications, the Navy's review was not to "provide detailed checking or coordination of various drawings and specifications prepared by the Contractor."

22. Despite this restriction on the Navy's review authority, the Navy undertook an unreasonably detailed review and required re-design by West Coast that far exceeded the scope of the Navy's contractual authority.

23. For example, the Navy required HVAC control design to be included within the 100 percent design submittal when the contract did not require HVAC design to be included at that stage.

24. The same is true of the telecommunications distribution system design addressed in the Navy's letter of December 5, 2001.

25. Perhaps more importantly, the Navy required so-called "prescriptive" specifications in cases where prescriptive specifications were not required.

26. As a result, the Navy unreasonably withheld 100 percent design approval, which should have been given upon West Coast's initial submission, and unreasonably withheld approval for West Coast to proceed.

27. The Navy's actions caused unreasonable delay in the project and required West Coast to incur $37,500.00 in additional design costs.

**C. Delay Damages**

**1. <u>Use of Native Soil</u>**

28. On February 6, 2002, West Coast notified the Navy of a potential ambiguity in the Project specifications relating to use of native soils as backfill.

29. West Coast timely responded to the Navy's Request for Information respecting the issue and advised that West Coast was prepared to proceed using the native soil upon the Navy's direction.

30. The Navy unreasonably delayed until April 8, 2002 before issuing a notice to proceed to West Coast.

31. The Navy's delay caused West Coast to incur $81,422.48 in additional labor, equipment rental and overhead charges.

**2. <u>Fire Alarm System</u>**

32. In the spring of 2002, the Navy approached West Coast to discuss replacing, as an accommodation to the Navy, the fire alarm subcontractor to West Coast with the fire alarm contractor, Elecon, that was performing work in the existing building.

33. The Navy issued Proposed Change Order #13 on May 14, 2002 to cover this change.

34. Thereafter, West Coast acted diligently in attempting to coordinate with Elecon and the Navy to secure approval to proceed, but no progress was made, causing West Coast to incur delay damages.

35. In October 2002, West Coast received pricing from a new fire alarm contractor, First Alarm, that apparently was replacing Elecon, at the Navy's direction, on the existing building.

36. As a result of issues between Elecon, First Alarm and the Navy, it was not until January 17, 2003 that the government issued P00012 for the installation of the fire alarm system.

37. The unreasonable eight month delay caused West Coast to incur $59,033.24 in damages.

**3. <u>Concrete Repairs</u>**

38. On May 29, 2002, the Navy issued a suspension of work to West Coast due to possible structural repairs needed to the concrete foundation.

39. On May 31, 2002, West Coast submitted its repair recommendations to the Navy and by June 5, 2002 was ready, willing and able to perform the necessary repairs.

40. The government acted unreasonably in not lifting the suspension until June 27, 2002.

41. In the interim, West Coast incurred increased costs due to idle and lost crews, equipment rental and overhead. The cost impact of the Navy's unreasonable delay was $90,991.71.

4. **Notice to Proceed No. 3**

42. West Coast completed all work pursuant to Notice to Proceed No. 2, respecting the building caissons, on January 24, 2002.

43. West Coast had complete design approval pertaining to all work to be performed pursuant to Notice to Proceed No. 3 by January 24, 2002.

44. Despite this approval, the Navy delayed without justification in issuing Notice to Proceed No. 3 until March 14, 2002.

45. The delay caused by the government had a cost impact on West Coast of $81,478.99.

D. **Liquidated Damages**

46. By letter dated May 23, 2003, the Navy assessed liquidated damages of $1,450.00 per calendar day based on allegations of delay caused by West Coast that, according to the Navy, affected the date of substantial completion.

47. PC0015, dated November 10, 2003, set the liquidated damages at $40,600.00.

48. For the reasons set forth above, the delay in substantial completion was not caused by West Coast but rather the Navy's own actions and breaches of its obligations. The assessment of liquidated damages is, therefore, improper.

E. **West Coast Properly Submits a Certified Claim**

49. By letter dated June 14, 2005, West Coast submitted a properly certified claim pursuant to FAR 52.233-1 to the cognizant Contracting Officer. The Contracting Officer failed to issue a decision on the claim within a reasonable time, thereby permitting West Coast to proceed with this lawsuit pursuant to 41 U.S.C. § 605 (c)(5).

## COUNT I - BREACH OF EXPRESS CONTRACT

50. West Coast incorporates by reference Paragraphs 1-49 of this Complaint.

51. By failing to pay West Coast $756,654.62 for its increased costs in constructing the Project, the Navy breached the Contract, entitling West Coast to money damages in the amount of its increased costs.

## COUNT II - BREACH OF IMPLIED-IN-FACT CONTRACT/UNJUST ENRICHMENT

52. West Coast incorporates by reference Paragraphs 1-51 of this Complaint.

53. Based upon communications between West Coast and the Navy's authorized officials, implied-in-fact contracts exist between West Coast and the Navy pursuant to which the Navy is responsible for paying West Coast for its increased costs.

54. By causing West Coast to incur additional costs in construction of the Project and knowingly retaining the benefit of the elements of the project that caused West Coast to incur additional costs, the Navy breached the implied-in-fact contracts and has been unjustly enriched, entitling West Coast to money damages in the amount of West Coast's damages.

WHEREFORE, West Coast requests judgment against the United States for $756,654.62, plus applicable interest, and costs and attorney fees pursuant to 28 U.S.C. § 2412 as well as such other relief the Court deems just and proper.

Respectfully Submitted,

SHULMAN, ROGERS, GANDAL,
PORDY & ECKER, P.A.

Date: October 18, 2005

Ross D. Cooper
11921 Rockville Pike, 3rd Floor
Rockville, MD 20852
Phone: (301) 230-5239
Fax: (301) 230-2891

Counsel to West Coast Contractors of Nevada, Inc.