No partial payment to Subcontractor shall operate as approval of acceptance of work done or materials furnished under this Subcontract. If this Subcontract provides for payment for work to be performed on a unit price basis, Subcontractor agrees to be bound by Owner's measurement of the quantity of work; however, if Owner does not provide any measurement of work, Subcontractor agrees to be bound by Contractor's measurement of the work. Any partial payment or payments made by Contractor to Subcontractor will be subject to final audit and adjustment and Subcontractor agrees to reimburse Contractor for any overpayment. Acceptance by Subcontractor of final payment shall release Contractor and its surety of all claims arising under or by virtue of this Subcontract except those claims previously submitted in writing by Subcontractor. As between the parties hereto and except as expressly provided otherwise in this Agreement, Subcontractor accepts the price or prices set forth herein as full compensation for doing all work and furnishing all materials contemplated and embraced in this Subcontract; for all loss or damage arising out of the nature of the work aforesaid or from the action of the elements or from any unforeseen difficulties or obstructions which may arise or be encountered in the prosecution of the work until its acceptance by Owner; for all risks of every description connected with the work; for all expense incurred by or in consequence of the suspension or discontinuance of the work; and for faithfully completing work and the whole thereof in the manner and according to the requirements of Contractor and Owner and Owner's representative.

Contractor may deduct from any amounts due or to become due to Subcontractor any sum or sums owing by Subcontractor to Contractor ~~whether or not arising under this~~ Subcontract and in the event of any breach of Subcontractor of any provision or obligation of this Subcontract, or in the event of the assertion by other parties of any claim of lien against Contractor or its surety or the construction site arising out of Subcontractor's performance of this Subcontract. Contractor shall have the right, but is not required, to retain out of any payments due or to become due to Subcontractor an amount sufficient to completely protect Contractor from any and all loss, damage or expense therefrom until the situation has been remedied or adjusted by Subcontractor to the satisfaction of Contractor.

Contractor reserves the right to make payment by joint check or by direct check to Subcontractor and Subcontractor's materialmen or subcontractors or any person who has right of action against Contractor or its surety under any law. Contractor and Subcontractor reserves the right to determine the manner and amount of payment to be made.

Subcontractor shall furnish, if requested by Contractor, sworn affidavits from time to time, in accordance with the form provided by Contractor, which shall state amounts due or to become due and amounts paid to suppliers and other parties contractually related with Subcontractor with respect to labor and materials furnished or to be furnished under this Subcontract.

Subcontractor agrees and covenants that money received for the performance of this Subcontract shall be used ~~solely~~ first for the benefit of persons and firms supplying labor, materials, supplies, tools, machines, equipment, plant or services exclusively for this project in connection with this Subcontract and having the right to assert liens or other claims against the land, improvements or funds involved in the Project or against any bond or other security posted by Contractor or Owner, that any money paid to Subcontractor pursuant to this subcontract shall immediately become and constitute a trust fund for the benefit of said persons and firms, and shall not in any instance be directed by Subcontractor to any other purpose until all obligations arising hereunder to date have been fully discharged and all claims arising therefrom have been fully paid.

No payments will be made until the signed subcontract agreement and insurance certificates are received by this office. Subcontractor will conform with the prevailing wage requirements, an outline is available upon request. Certified payroll is required weekly. Subcontractor agrees as a condition precedent to payment hereunder, to furnish Contractor with such partial or final conditional releases of claims or waivers of Lien as Contractor may from time to time request.

If at any time Contractor, at its sole but reasonable discretion, shall determine that Subcontractor's financial condition has become unstable or unsatisfactory, Subcontractor shall furnish additional security satisfactory to Contractor within three days after written demand therefore is delivered to Subcontractor, and, in default of furnishing said additional security, Contractor shall have the option to terminate Subcontractor's right to proceed or to initiate such other action as Contractor may, at its sole but reasonable discretion, deem necessary for the protection or preservation of its interests and the prevention of delay in the progress of work on the Project, including but not limited to the work to be performed by Subcontractor hereunder. In the event of such cancellation, the rights of Contractor shall be the same as if Subcontractor had willfully refused to further perform the Subcontract. All bonds are to be paid for by the Contractor.



WCC Subcontractor

**SECTION 4. RETENTION REDUCTION.** If at any time prior to final payment hereunder Owner reduces the amount of retention held from Contractor, Contractor may, at its sole discretion, without the consent of Subcontractor's Surety, reduce accordingly the retained percentage withheld from Subcontractor.

**SECTION 5. CHANGES AND EXTRA WORK.** (a) Contractor may, at any time by written order and without notice to Subcontractor's Surety, make changes in, additions to and omissions from the work to be performed and materials to be furnished under this Subcontract, and shall make an appropriate adjustment in the subcontract price and time of performance. If Subcontractor shall disagree with such adjustment, Subcontractor shall give written notice to Contractor any further adjustment shall be agreed upon in writing by the parties hereto but Subcontractor shall immediately proceed with the performance of this Subcontract as so changed. Any change or modification shall be subject to all the terms and conditions of this Subcontract.

(b) If Owner shall order any changes or extra work, including additions, reductions or deletions, in the work to be performed hereunder or within the general classification of any work to be performed hereunder, Subcontractor will upon written order of Contractor perform the work required, and any adjustment in compensation or in the time for performance shall be as the parties agree. If the parties are unable to agree, Subcontractor shall nevertheless proceed with such work and shall give prompt written notice thereof to Contractor. The amount of compensation and the time of performance shall be adjusted only to the extent ~~allowed~~ negotiated by Owner. Subcontractor shall comply with and be bound by any notice provisions and claims procedure, including arbitration, contained in the General Contract or required by Owner. If any claim of Subcontractor is presented to Owner together with claims of Contractor or others, Contractor's determination as to Subcontractor's share of an award by Owner shall be binding and conclusive on Subcontractor.

(c) Any claim for adjustment of the subcontract price or time of performance must be made in writing within ten days from the date such change is ordered. No increase or decrease in the subcontract price or time of performance shall be binding on Contractor unless agreed upon in writing. Change Orders to this subcontract agreement can only be authorized by Mario Ramirez. No other changes, verbal or written, will be acknowledged. The cost of correcting any deviations done without a change order will be charged to the Subcontractor's account.

**SECTION 6. EXAMINATION OF DOCUMENTS AND SITE.** Subcontractor represents that it has carefully examined all of the documents comprising the General Contract and is familiar with the terms and conditions thereof, and has fully acquainted itself with all jobsite conditions relevant to the work that it has made all investigations essential to a full understanding of the difficulties which may be encountered in performing the work; and that, as between the parties hereto and except as expressly provided otherwise in this Agreement, Subcontractor will complete the work for the compensation stated in this subcontract and assumes full and complete responsibility for completion of the work.

**SECTION 7. PROGRESS OF WORK AND ORDER OF PERFORMANCE.** Time is of the essence of this Subcontract. Subcontractor shall furnish all materials, labor, tools, equipment and supplies necessary for the performance of this Subcontract in a proper, efficient and workmanlike manner and so as to perform the work in accordance with and within the time specified in progress schedules designated by Contractor or any revisions thereof. Subcontractors will order all material and equipment immediately in order to meet the schedule. West Coast Contractors may charge up to ~~$1,500.00~~ per specs. to the Subcontractors account for every working day the Subcontractor delays the project for reasons within the Subcontractor's control. Subcontractor shall prosecute the work in a prompt and diligent manner whenever such work, or any part of it, becomes available, or at such other time or times as Contractor may direct, and so as to promote the general progress of the entire construction, and shall not interfere with or hinder the work of Contractor or any other Subcontractor. If Contractor shall deem it necessary and with reasonable notice, Subcontractor, at its own expense and on demand of Contractor, shall provide additional work forces, overtime or additional shifts and shall expedite the furnishing of materials so as to meet the progress schedule. Any materials that are to be furnished by Subcontractor hereunder shall be furnished in sufficient time to enable Subcontractor to perform and complete its work within the time or times provided herein. Subcontractor shall reimburse Contractor for any and all damages suffered by or assessed against Contractor, including liquidated damages, which are attributable to or caused soley by Subcontractor's failure to furnish the materials or to perform the work required by this Subcontract within the time fixed or in the manner provided for herein. Payment of such damages shall not release Subcontractor from its obligation to otherwise fully perform this Subcontract. Upon written request by Contractor, Subcontractor shall furnish to Contractor such evidence as Contractor may require relating to Subcontractor's ability to fully perform this Subcontract in the manner and within the time specified herein.

WCC



Subcontractor

If Subcontractor fails to comply or becomes disabled from complying with the provision herein as to character and time of performance, and the failure is not corrected within forty-eight hours after written request by Contractor to Subcontractor, Contractor may, without prejudice to any other right or remedy, take over and complete the performance of this Subcontract at the expense of Subcontractor or Contractor may, without taking over the work, furnish the necessary materials and may employ any other person or persons including another subcontractor to finish the work and provide the materials therefore, all without liability on the part of Contractor for any damage, wear and tear, depreciation, theft, action of the elements, acts of god, fire, flood, vandalism, or other injury or damage to said materials, tools, and appliances and in case of such discontinuance of Subcontractor's employment by Contractor, Subcontractor shall not be entitled to receive any further payment under this Subcontract until the said work shall be wholly finished and Contractor shall have received payment in full therefore from owner, at which time, if the unpaid balance of the amount to be paid under this Subcontract exceeds the expenses incurred by Contractor in finishing the work, such excess shall be paid by Contractor to Subcontractor; but if such expense shall exceed such unpaid balance, then Subcontractor shall pay the difference to Contractor. As used in this Section the work "Expense" shall mean actual cost to Contractor plus fifteen percent (15%) for overhead. The expense incurred by Contractor as herein provided, either for furnishing materials or for finishing the work, and any damages incurred as a result of such default, shall be chargeable to and paid by Subcontractor and Contractor shall have a lien upon all materials, tools and appliances taken possession of, as aforesaid, to secure the payment thereof.

Contractor shall have the right to enter upon the premises and take possession, for the purpose of completing the work included in this Subcontract, of all materials, ~~tools and appliances~~ thereon.

Subcontractor shall be considered disabled from prosecuting the work covered by this Subcontract if Subcontractor's interest herein, or any part thereof, be assigned or transferred in any manner, either voluntarily or involuntarily or by operation of law, or if a petition under the Bankruptcy Act or to appoint a Receiver is filed by or against Subcontractor, or if Subcontractor dies or becomes insolvent or (if an individual) dies or (if a business entity) dissolves or terminates its existence.

**SECTION 8. DELAYS, EXTENSIONS OF TIME, STOPPAGE OR SUSPENSION OF WORK, DISPUTES.** If Subcontractor's performance of this Subcontract is delayed or interfered with by acts of Owner, Contractor or other subcontractors, it may request an extension of time for the performance of same, as hereinafter provided, but except as otherwise permitted by law, ~~Subcontractor shall not be entitled to any increase in the Subcontract price or to damages or additional compensation as a consequence of such delays~~. If a progress schedule is furnished by Contractor to Subcontractor, it shall be solely for Contractor's benefit; however, Subcontractor must be ready to perform at the times indicated in the progress schedule. Contractor makes no representation that it will be ready for Subcontractor at the times indicated in said schedule regardless of whether delays may be within the control of Contractor. As required by Contractor, Subcontractor shall submit to Contractor progress schedules for the work subcontracted, or at Contractor's election, cooperate in the preparation of a progress schedule.

No allowance of an extension of time, for any cause whatever, shall be granted to Subcontractor unless Subcontractor shall have made written request upon Contractor for such extension within forty-eight hours after the commencement of the delay and unless Contractor and Subcontractor have agreed in writing upon the allowance of additional time to be made. If such extension of time is requested because of Owner caused delays or delays allowable under the General Contract, any extension of time shall be granted to Subcontractor only to the extent allowed by Owner.

If Owner, with or without cause, shall terminate the General Contract or shall stop or suspend work under the General Contract, or if Owner shall fail to pay when due to any sum payable under the General Contract, Contractor may order Subcontractor to stop or suspend work hereunder and Contractor shall be liable to subcontractor for any such stoppage or suspension only if and to the extent that Owner shall be liable to Contractor therefore. Contractor will pay to Subcontractor the value of work that Subcontractor has completed before the work was stopped or suspended but only if and to the extent that Owner shall have paid Contractor for such work of Subcontractor.

In the event of any dispute or claim between Contractor and Owner which directly or indirectly involves the work required to be performed by Subcontractor under this Subcontract or in the event of any dispute or claim between Contractor and Subcontractor which directly or indirectly involves a claim against Owner for either additional compensation or an extension of time under the General Contract, Subcontractor agrees to be bound to Contractor and Contractor agrees to be bound to Subcontractor to the same extent that Contractor is bound to Owner by the terms of the General Contract and by all decisions, findings, or determinations made thereunder, whether by the



WCC

Subcontractor

person so authorized in the General Contract, or by an administrative agency or court of competent jurisdiction or by arbitration, ~~whether or~~ when ~~not~~ Subcontractor is a party thereto. If any dispute or claim is prosecuted or defended by Contractor, and Subcontractor is not directly a party or litigant, Subcontractor agrees to cooperate fully with Contractor and to furnish all documents, statements, witnesses and other information required by Contractor for such purpose, and shall pay or reimburse Contractor for all expenses and costs, including reasonable attorney's fees, incurred in connection therewith to the extent of Subcontractor's interest in such claim or dispute. ~~It is expressly understood and agreed that in connection with the determination of such claims or disputes that as to any and all work done and performed by Subcontractor and as to any and all materials or services furnished or agreed to be furnished by Subcontractor and as to any and all damages if any, incurred by Subcontractor in connection with this project Contractor shall never be liable to Subcontractor for any greater extent than Owner is liable to Contractor.~~

It is further specifically agreed by the parties hereto that no claim, dispute or controversy shall interfere with the progress and performance of work required to be performed under this Subcontract and that Subcontractor shall proceed as directed by Contractor in all instances with its work under the Subcontract and that any failure of Subcontractor to comply herewith and to proceed with its work shall automatically be deemed a breach of this Subcontract entitling Contractor to all remedies available in the event of breach.

**SECTION 9. RESPONSIBILITY FOR THE WORK.** Subcontractor shall be responsible for its own work, property and materials until completion and final acceptance of the General Contract and release of responsibility by Owner, and shall bear the risk of any loss or damage until such acceptance. In the event of loss or damage, Subcontractor shall proceed promptly to make repairs or replacement of the damaged work, property or materials at its own expense, as directed by Contractor. Subcontractor waives all rights Subcontractor might have against Contractor for loss or damage to Subcontractor's work, property or materials.

**SECTION 10. INSURANCE.** Subcontractor shall, at his expense, procure and maintain insurance on all of his operations, in companies acceptable to Contractor, in accordance with the attached Exhibit "B" entitled "Insurance Requirements".

**SECTION 11. BONDS.** Unless waived in writing, Subcontractor shall furnish a Performance Bond in an amount equal to the full subcontract price and a Payment Bond in an amount equal to the full subcontract price. Such bonds shall be on forms furnished by Contractor and with a surety satisfactory to Contractor. No change, alteration or modification in or deviation from this Subcontract, its terms, conditions, plans or specifications, or in the manner, time or amount of payment as provided herein whether or not made in the manner herein provided, shall release or exonerate, in whole or in part, any surety on any bond given in connection with this Subcontract. Said bonds shall extend to and cover any extra work or change performed by Subcontractor pursuant to this Subcontract.

**SECTION 12. OBLIGATIONS OF SUBCONTRACTOR.** Subcontractor specifically obligates itself to Contractor in the following respects (and this agreement is made upon such express conditions) to wit:

(a) To indemnify Owner, Contractor and their members, officers, directors and employees against and save them harmless from any and all claims, suits, liability, expense, including attorney's fees or damage or any alleged or actual infringement or violation of any patent or patent right arising in connection with this Subcontract and anything done thereunder.

(b) To protect, hold free and harmless, defend and indemnify Contractor, including its members, officers, directors and employees, from all liability, penalties, costs, losses, damages, expenses, causes of action, claims or judgments, including attorney's fees, resulting from injury to or death sustained by any person (including Subcontractor's employees) or damage to property of any kind, which injury, death or damage arises out of or is in any way connected with the performance of work under this Subcontract. Subcontractor's aforesaid indemnity and save harmless agreement shall apply to any acts or omissions, or negligent conduct, whether active or passive, on the part of Contractor or Subcontractor (or their agents, subcontractors or employees); except that said agreement shall not be applicable to injury, death or damage to property arising from the ~~xxx~~ negligence or willful misconduct of Contractor, its officers, agents, servants, or independent contractors (other than Subcontractor) who are directly responsible to Contractor. This indemnification agreement shall extend to claims asserted after termination, for whatever reason, of this Subcontract.

(c) To pay for all materials, equipment including repairs thereof and parts, fuel and labor, including sales taxes and other taxes, ordered for or used in the project by Subcontractor and shall suffer no claim of lien or statutory withholding notice to be filed or served with respect to the subcontract work and shall present, on demand, to Contractor satisfactory evidence of any such payment.

WCC



Subcontractor

(d) To warrant and guarantee the work and materials covered by this Subcontract and agrees to make good, at its expense, any defect in materials or workmanship, including the restoration of work of Contractor or other Subcontractors that has been affected thereby Subcontractor further agrees that 1) on demand of Contract, Subcontractor will furnish and pay for a maintenance bond to indemnify Contractor for any loss that may be caused by breach of said warranty and guarantee; and on demand, Subcontractor shall furnish and pay for all written guarantees and/or maintenance bonds required by the General Contract in connection with Subcontractor's work 2) unless and until Contractor is released from responsibility by Owner, Contractor may withhold payment from Subcontractor such sums as, ~~[illegible]~~, are necessary to protect and indemnify Contractor for any loss that may be caused by breach of said warranty or guarantee. Bonds are to be paid by Contractor. B

(e) To assume towards Contractor all the obligations and responsibilities that Contractor assumes towards Owner as set forth in the General Contract, including all conditions, drawings, specifications and addenda thereto and other documents hereinabove referred to insofar as applicable, generally or specifically, to the materials to be furnished and the work to be performed under this Subcontract.

(f) To obtain and pay for all permits, licenses and official inspections made necessary by its work and to comply with all laws, ordinances and regulations bearing on its work and the conduct thereof.

(g) To be fully and exclusively responsible for, and to pay when due, any and all applicable contributions, allowance or other payments or deductions, however termed, required by union labor agreements or required by law now or hereafter in force; and Subcontractor shall indemnify Contractor against, and save it harmless from any and all loss, damage, costs, expenses and attorney's fees suffered or incurred on account of any breach of the aforesaid obligations and covenants, and any other provision or covenant of this Subcontract. At any time before final settlement or adjudication of any loss, damage, liability, claim, demand, suit or cause of action for which Subcontractor in this Subcontract agrees to indemnify and save harmless Contractor, ~~[illegible]~~. B

**SECTION 13. USE OR OCCUPANCY BY CONTRACTOR.** Whenever it may be useful or necessary for Contractor to do so, Contractor may occupy and use any portion of the work which has been either partially or fully completed by Subcontractor before final inspection and acceptance thereof by Owner, but such use or occupancy shall not relieve Subcontractor of its guarantee of said work and materials nor of its obligation to make good, at its own expense, any defect in materials and workmanship which may occur or develop prior to Contractor's release from responsibility by Owner. Provided, however, Subcontractor shall not be responsible for the maintenance of such portion of the work as may be used or occupied by Contractor, nor for any damage thereto that is due to or caused by the ~~sole~~ negligence of Contractor during such period of use. Subcontractor agrees further that if it shall cause any stains, blemishes, imperfections, marks or damage of any sort whatsoever, whether to its work or to the work of Contractor or to the work of another subcontractor, it will immediately remedy the damage so caused to the satisfaction of Contractor. Subcontractor further agrees when so required by Contractor to do any and all cutting and patching necessary in connection with Subcontractor's portion of the work and agrees further that such cutting and patching shall match other work performed under the General Contract.

**SECTION 14. DAMAGE TO OTHER WORK.** The work provided for in this Subcontract constitutes only a part of the work being performed for Owner by Contractor and other subcontractors. Subcontractor, therefore, agrees to perform the work called for in this Subcontract in such a manner that it will not injure or damage any other work performed by Contractor or any other Subcontractor, and further agrees to pay Contractor for any damage that may be caused to such other work by Subcontractor or by its agents or employees. If the performance of any item of work by Subcontractor is related to or dependent upon any other item of work performed or materials furnished by others. Subcontractor warrants, by undertaking to perform his work, that such other items are satisfactory and acceptable, and waives all claims against Contractor for additional compensation or for damages resulting from any defects therein.

**SECTION 15. INDEPENDENT CONTRACTOR.** Subcontractor represents that it is, or prior to the start of work hereunder that it will become, an Independent Contractor and an employing unit subject, as an employer, to all applicable Unemployment Compensation statutes and Federal and State statutes including Worker's Compensation statutes relating to payroll retention and contributions so as to relieve Contractor of any responsibility or liability for treating Subcontractor's employees as employees of Contractor for the purpose of keeping records, making reports and payment of Unemployment Compensation taxes or contributions or payroll contributions and retention, and

payment of Workers' Compensation Insurance. Subcontractor agrees to indemnify and hold Contractor harmless and reimburse it for any expense or liability incurred under said statutes in connection with employees of Subcontractor including a sum equal to benefits paid to those who were Subcontractor's employees, where such benefit payments are charged to Contractor under any Merit Plan or to its individual Reserve Account pursuant to any State Unemployment Compensation statute or other statute, regulation or requirement, including Workers' Compensation statutes.

Subcontractor further agrees as regards (a) the production, purchase and sale, furnishing and delivering, pricing and use or consumption of materials, supplies and equipment, (b) the hire, tenure or conditions of employment of employees and their hours of work and rates of and the payment of their wages, and c) the keeping of records, making of reports, and the payment, collection, and deduction of Federal, State and Municipal taxes and contributions, that Subcontractor will keep and have available all necessary records and make all payments, reports, collections and deductions, and otherwise do any and all things so as to fully comply with all Federal, State and Municipal laws, ordinances and regulations in regard to any and all said matters insofar as they affect or involve Subcontractor's performance of this Subcontract, all so as to fully relieve Contractor from and protect it against any and all responsibility or liability therefore or in regard thereto.

**SECTION 16. OWNER'S REPRESENTATIVE.** The words "Owner's Representative" as used herein refer to the person appointed by Owner to supervise the work in behalf of Owner.

**SECTION 17. ASSIGNMENT AND SUBLETTING.** Any assignment, subletting or delegation, by operation of law or otherwise, in whole or in part, by Subcontractor of this Subcontract, of the work to be performed or of any claims arising hereunder without the prior written consent of Contractor shall be void. Contractor shall not recognize or be bound by any assignment of any right to payment earned or to be earned by performance hereunder by Subcontractor unless or until Contractor shall receive written notice which reasonably proves the assignment and identifies the rights assigned. Any assignment hereunder shall be subject to, and Contractor reserves all rights and remedies possessed by or available to Contractor by law or under this Subcontract as against Subcontractor, its sureties and assigns, including without limitation, rights to set off, to retain monies, to amend or modify this Subcontract, and to assert all other defenses and claims whether or not arising under this Subcontract. The making of any assignment by Subcontractor or any consent thereto by Contractor shall in no event relieve Subcontractor, or its sureties hereunder, of any of their obligations, duties, responsibilities or liabilities.

Any subletting hereunder shall be on the express condition that the sub-subcontract shall be subject to the terms and conditions of this Subcontract and Subcontractor shall incorporate all terms and conditions or this Subcontract in any such sub-subcontract.

**SECTION 18. SAFETY.** (a) Subcontractor shall comply fully with all laws, orders, citations, rules, regulations, standards and statutes with respect to occupational health and safety, accident prevention, safety equipment and practices, including the accident prevention and safety program of Owner and Contractor. Subcontractor shall conduct inspections to determine that safe working conditions and equipment exist and accepts sole responsibility for providing a safe place to work for its employees and for employees of its subcontractors and suppliers of material and equipment, for adequacy of and required use of all safety equipment and for full compliance with the aforesaid laws, orders, citations, rules, regulations, standards and statutes.

(b) Subcontractor shall indemnify, defend and save harmless Contractor, its officers, directors, agents and employees from claims, penalties, damages, liability, loss, costs and expenses, including attorneys' fees, arising from injury or death resulting therefrom, caused or alleged to have been caused by any violation or infraction by Contractor or Subcontractor of any law, order citation, rule, regulations, standard or statute in any way relating to the occupational health or safety or employees, including but not limited to the use of Contractor's or other's equipment, hoist, elevators, or scaffolds, unless caused by the ~~sole~~ negligence or willful misconduct of Contractor.

**SECTION 19. LABOR LAWS.** Subcontractor agrees to be bound and comply with all applicable labor laws, regulations and standards issued or promulgated by a federal, state or other governmental authority having jurisdiction. Subcontractor further agrees to be bound by and comply with all applicable Fair Employment Practices and Equal Opportunity Provisions and Regulations of federal, state or other governmental authority having jurisdiction. Subcontractor acknowledges that it has read said laws, regulations, standards and provisions and is familiar with the terms thereof. Subcontractor agrees that any further subcontractor of any portion of the work covered hereby shall observe and be bound by said provisions to the same extent as herein required of Subcontractor.

WCC



Subcontractor

**SECTION 20. DRAWINGS, PLANS, SPECIFICATIONS.** When drawings, plans, specifications, samples or detail work shall be required by this Subcontract, or shall otherwise be required by Contractor to be submitted by Subcontractor, whether on account of work required to be done hereunder or on account of changes in work, Subcontractor agrees to supply the same promptly to Contractor for approval by Owner. If any such drawings, plans, specifications, samples or detail work as submitted by Subcontractor, whether or not they shall be approved by Owner, deviate from or are inconsistent with the design drawings or the specifications of the job, and in the further extent that any such deviations or inconsistencies shall cause Contractor to suffer any damage or incur any cost or expense because of delays or extra work or otherwise, Subcontractor agrees to reimburse Contractor therefore. If any such damage, cost or expense be imposed upon Contractor, Contractor may, at its option, withhold from Subcontractor any payments due or to become due to Subcontractor an amount sufficient fully to reimburse Contractor therefore. The provisions of this paragraph are cumulative of the remedies provided Contractor by Section 3 of this Subcontract.

**SECTION 21. SETTING OF STAKES.** Contractor will set such stakes as Contractor determines to be necessary to establish the lines and grades for the completion of the work specified in Section 2. Subcontractor shall give Contractor not less than two working days' written notice in advance of the commencement of the operations of Subcontractor which require such stakes. Such stakes shall be carefully preserved by Subcontractor. If such stakes are destroyed or damaged they will be replaced at Contractor's earliest convenience. Subcontractor will be charged with the cost of such replacement if, in Contractor's judgment, the stakes were carelessly or willfully destroyed or damaged by Subcontractor's operations or were destroyed, damaged or removed by third parties during a delay by Subcontractor in the commencement of its operations.

**SECTION 22. NOTICES.** Any notice, where required by the terms of this Subcontract, shall be in writing and may be served by personal delivery or by mail or any standard form of telegraphic communication. Personal delivery is complete when the notice is delivered to Subcontractor or its representative at the project or at the office address of Subcontractor appearing in this Subcontract. Subcontractor shall at all times during its work on this project have a representative authorized to receive written notices present on the project site during all normal working hours. In the absence of such a representative, personal delivery is complete when the notice is delivered to any of Subcontractor's supervisors or workmen, or ~~XXXXXX XXXXXXX XXXX XX X XXXXXXXXXX XXXXX XX XXX XXXXXXX XXXX XX XXX XXXX XX XXXXXXXXXXXXXX XXXX~~ mailed to Subcontractors main office. B.

**SECTION 23. LABOR AGREEMENTS.** Subcontractor agrees and warrants that at all times it will diligently prosecute the work and supply an adequate number of workers on the job. Picketing, demonstrations or labor disputes of any kind shall not excuse the Subcontractor's obligations to perform in accordance with this Agreement. The General Contractor may establish a reserved gate or reserved time system at its sole option. Should the General Contractor establish a reserved gate or reserved time system, Subcontractor shall direct its employees and suppliers to perform in accordance with the said system. Regardless of whether a reserved gate or reserved time system is established, Subcontractor shall be required to perform at all times in accordance with this Agreement. Failure of Subcontractor to perform shall be considered a material breach of this Agreement.

Subcontractor, to the extent permissible under Federal and any applicable State laws, shall comply with, observe, and be bound by all the terms and provisions of any labor agreements executed by Contractor or on Contractor's behalf, specifically including the terms and provisions of such agreements providing (a) for the assignment of work or the settlement of jurisdictional disputes through the Rules, Regulations and Procedures of the National Joint Board for Settlement of Jurisdictional Disputes in the Building and Construction Industry or any other agreed method for the determination of work assignments or the settlement of jurisdictional disputes, (b) for the adjustment of any other disputes or grievances, c) for hiring and union-security and (d) for the making of payments into or under health and welfare or other fringe benefit funds or plans, to the extent that the terms and provisions of such agreements can legally be applied to the work to be done hereunder. Subcontractor agrees that if any portion of such work is further subcontracted, such sub-subcontractor shall be bound by and observe the terms and provisions of such agreements to the same extent as is herein required of Subcontractor, and that an express provision imposing such obligation upon the sub-subcontractor will indemnify, defend and save Contractor harmless from and against any liability, claim, loss, damage or cause of action resulting in any way, directly or indirectly, from its failure to comply with the requirements of this paragraph.

The wages and working conditions of Subcontractor shall be of the same standard as those of Contractor and shall be subject to Contractor's approval.



WCC

B.

Subcontractor

**SECTION 24. SEVERABILITY.** To the best knowledge and belief of the parties, this Subcontract now contains no provision that is contrary to Federal or to State law or any ruling or regulation of a Federal or State agency. Should, however, any provision of this Subcontract at any time during its term be in conflict with any such law, ruling or regulation, then such provision shall continue in effect only to the extent permitted. If any provision of this Subcontract is thus held inoperative, the remaining provisions of this Subcontract shall nevertheless remain in full force and effect to the extent permitted by law.

**SECTION 25. CLEANUP.** Subcontractor shall perform its work as herein required so that the premises shall at all items be neat, orderly and free from debris. Upon termination or completion of its work, Subcontractor agrees to remove all unused materials and all equipment, utilities and facilities furnished by Subcontractor, to clean up all refuse and debris, and to leave the premises clean, orderly and in good condition.

**SECTION 26. NON-WAVIER.** Waiver by Contractor of any breach hereof by Subcontractor shall not constitute a waiver of any subsequent breach of the same or any other provision hereof. If any provision of this Subcontract, or any part thereof, shall at any time be held to be invalid, in whole or in part, under any applicable Federal, State, Municipal or other law, ruling or regulation, then such provision shall remain in effect to the extent permitted, and the remaining provisions hereof shall remain in full force and effect.

**SECTION 27. ENTIRE AGREEMENT.** This Subcontract agreement contains all covenants, stipulations and provisions agreed upon by the parties hereto. No agent or representative of either party has authority to make, and the parties shall not be liable for, any statement, representation, promise or agreement not set forth herein. Words used in this Subcontract in the present tense include the future as well as the present; words used in the masculine gender include the feminine and neuter; the singular number includes the plural, and the plural the singular.

**SECTION 28. SECTION TITLES.** Section Titles in this subcontract agreement are for convenience only and shall not be construed to modify, expand or limit the provisions of the section to which they refer.

**SECTION 29. ARBITRATION.** If any dispute shall arise between Contractor and Subcontractor pertaining in any manner to the construction or interpretation of this Subcontract, or to the rights or obligations of the parties hereunder, or to the breach hereof, which the parties are unable to settle by mutual agreement, Contractor shall have the exclusive option either to have the dispute determined by court or by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. Contractor shall exercise said option by commencing a court action or by commencing an arbitration proceeding. If Subcontractor first commences a court action with respect to a dispute which Contractor desires to have determined by arbitration or an arbitration proceeding which Contractor desires to have determined by court action, Contractor shall have the right to have said court action or arbitration proceeding stayed if Contractor promptly shall commence the arbitration proceeding or court action desired by Contractor. Judgment upon the award in any arbitration proceeding may be entered in any court having jurisdiction thereof. The prevailing party (as determined by the court or arbitrator(s) shall be entitled to reasonable attorneys' fees from the other party in an amount to be fixed by the court or arbitrator(s). The arbitrator(s) in any arbitration proceeding shall have the right to allocate his/her or their fees between the parties or to charge all of such fees to one party, as the arbitrator(s) shall deem to be just. The law of the State of Nevada and/or State of California shall govern all disputes referred to in this section. The provisions of Section 1283.05 of the Code of Civil Procedure of the State of Nevada and State of California (pertaining to depositions and discovery) hereby are incorporated by reference herein and are made a part hereof.

**CONTRACTORS ARE REQUIRED BY LAW TO BE LICENSED AND REGULATED BY THE CONTRACTORS STATE LICENSE BOARD. ANY QUESTIONS CONCERNING A CONTRACTOR MAY BE REFERRED TO THE REGISTRAR OF THE BOARD WHOSE ADDRESS IS:**

**NEVADA CONTRACTORS' STATE LICENSE BOARD**

9670 GATEWAY DRIVE, SUITE 100
RENO, NEVADA 89511

4220 SO. MARYLAND PARKWAY, BLDG. D, SUITE 800
LAS VEGAS, NV 89119

**CALIFORNIA CONTRACTORS' STATE LICENSE BOARD**

P.O. BOX 26000
SACRAMENTO, CA 95826
9821 BUSINESS PARK DRIVE
SACRAMENTO, CA 95827

WCC



Subcontractor

IN WITNESS WHEREOF, the parties have executed this Subcontract by their proper officers or duly authorized agents.

WEST COAST CONTRACTORS OF NEVADA, INC.
CONTRACTOR

BY:__________________
MARIO R. RAMIREZ, PRESIDENT

DATE: 10/21/2007

ADDRESS: 7785 WHITE FIR STREET
RENO, NEVADA 89523

PHONE: 775-747-7774 FAX: 775-747-8887

LICENSE NO.: NV #25486, NV #38054, CA #531739

Mt. Rose Heating & Air Conditioning
SUBCONTRACTOR

BY:__________________
SIGNATURE

BY: Joe Bingham, Vice President
NAME (TYPE OR PRINT), TITLE

DATE: 9-9-07

ADDRESS: 310 Sunshine Lane
Reno, NV 89502

PHONE/FAX: P: 775-329-8384 F: 775-329-8502

LICENSE NO.: NV Lic #32146 CA Lic #770238

IF A CORPORATION, AFFIX CORPORATE SEAL

NAVAL POST GRADUATE SCHOOL
BUILDING 245 EXTENSION
MONTEREY, CA

WCC JOB NO. 824
OWNER CONTRACT NO. N62474-00-C-3035

SUBCONTRACT AGREEMENT NO. 824-13



WCC SUBCONTRACTOR

# EXHIBIT "A"
## SCOPE OF WORK

JH by Rose

**PROJECT NAME:** Naval Post Graduate School Building Extension 245, Monterey, CA

**SUBCONTRACTOR NAME:** Mt. Rose Heating & Air Conditioning

**SUBCONTRACT NUMBER:** 824-13

**CODE:** 15600

THIS SUBCONTRACT INCLUDES, BUT IS NOT NECESSARILY LIMITED TO THE FOLLOWING DESCRIBED ITEMS:

✱ FURNISH AND INSTALL HVAC SYSTEM, IN ACCORDANCE WITH PROJECT PLANS AND SPECIFICATIONS.

<u>DIVISION 15 - MECHANICAL</u>

✱ SPECIFICATION SECTION 15050 BASIC MECHANICAL MATERIALS AND METHODS
✱ SPECIFICATION SECTION 15070 MECHANICAL SOUND, VIBRATION AND SEISMIC CONTROL
✱ SPECIFICATION SECTION 15080 MECHANICAL INSULATION
✱ SPECIFICATION SECTION 15601 CENTRAL REFRIGERATION EQUIPMENT FOR AIR CONDITIONING
✱ SPECIFICATION SECTION 15720 AIR HANDLING UNITS
✱ SPECIFICATION SECTION 15730 UNITARY AIR CONDITIONING EQUIPMENT
✱ SPECIFICATION SECTION 15810 DUCTWORK AND DUCTWORK ACCESSORIES

**INCLUSIONS:** ALL NECESSARY LABOR, MATERIALS, EQUIPMENT, AND INCIDENTALS TO PERFORM SCOPE OF WORK AS DESCRIBED IN THE ABOVE NOTED SPECIFICATION SECTIONS.

- DESIGN-BUILD COORDINATION.
- FIVE (5) ROUNDS OF GOLF AT PEBBLE BEACH GOLF COURSE (By W.C.C.)

**EXCLUSIONS:** TEST AND BALANCE AND CONTROLS.

**NOTE:** ~~IN CASE OF CONFLICT BETWEEN THE PROPOSAL AND THE SPECIFICATIONS, THE SPECIFICATIONS AND PLANS SHALL PREVAIL.~~ PB

* Price based on preliminary plans & specifications as prepared by the Department of the Navy, dated 02/15/2001. All changes on construction drawing to be addressed in the form of a change order. PB

Inclusions & exclusion as per our proposal dated 08/31/2001. PB
Attachment A-1 made part of this Subcontract.



WCC SUBCONTRACTOR

# EXHIBIT "B"
# INSURANCE REQUIREMENTS

A. **Workers' Compensation and Employer's Liability Insurance.** Workers' Compensation insurance shall be provided. Employer's liability insurance shall be provided in amounts not less than $1,000,000 each accident for bodily injury by accident, $1,000,000 policy limit for bodily injury by disease, and $1,000,000 each employee for bodily injury by disease.

If there is an exposure of injury to Subcontractor's employees under the U.S. Longshoremen's and harbor Workers' Compensation Act, the Jones act or under laws, regulations or statutes applicable to maritime employees, coverage shall be included for such injuries or claims.

B. **General Liability Insurance.** Subcontractor shall carry Comprehensive General Liability insurance covering all operations by or on behalf of Subcontractor providing insurance for bodily injury liability and property damage liability for the limits of liability indicated below and including coverage for:

(1) premises and operations;
(2) products and completed operations;
(3) contractual liability insuring the obligations assumed by Subcontractor in this Agreement;
(4) broad form property damage (including completed operations);
(5) explosion, collapse and underground hazards; and
(6) personal injury liability.

Except with respect to bodily injury and property damage included within the products and completed operations hazards, the aggregate limits, where applicable, shall apply separately to Subcontractor's work under this Subcontract.

C. One of the following coverage forms is required:

(1) Comprehensive General Liability
(2) Commercial General Liability (Occurrence)
(3) Commercial General Liability (Claims Made)

D. If Subcontractor carries a **Comprehensive General Liability** policy, the limits of liability shall not be less than a combined Single Limit for bodily injury, property damage and Personal Injury Liability of:

$1,000,000 each occurrence
$1,000,000 aggregate

E. If Subcontractor carries a **Commercial General Liability** (Occurrence) policy:

(1) The limits of liability shall not be less than:

$1,000,000 each occurrence (combined single limit for bodily injury and property damage)
$1,000,000 for Personal Injury Liability
$1,000,000 Aggregate for Products Completed Operations
$1,000,000 General Aggregate

(2) If the policy does not have an endorsement providing that the General Aggregate Limit applies separately to this Project or if Defense Costs are included in the aggregate limits, then the required aggregate limits shall be $2,000,000.

F. Special **Claims Made** Policy Form Provisions:
Subcontractor shall not provide a Commercial General Liability (Claims made) policy without the express prior written consent of Contractor, which consent, if given, shall be subject to the following conditions:

(1) The limits of liability shall not be less than:

$1,000,000 each occurrence combined single limit for bodily injury and property damage)
$1,000,000 for Personal Injury Liability
$1,000,000 Aggregate for Products-Completed Operations
$1,000,000 General Aggregate

WCC



Subcontractor

(2) If the policy does not have an endorsement providing that the general Aggregate Limit applies separately to this Project, or if Defense Costs are included in the aggregate limits, then the required aggregate limits shall be $2,000,000.

(3) Subcontractor shall carry the required Commercial General Liability Insurance for four years following completion of Subcontractor's work under this Subcontract and Subcontractor shall furnish Certificates of Insurance to Contractor at the inception of each of these subsequent policies for four years as evidence of this required insurance.

(4) All Certificates of Insurance shall disclose that the policy is a Claims made form and shall show the applicable Retroactive Date.

(5) If the Retroactive Date is later than the date of this Subcontract and Subcontractor was previously insured under a Commercial General Liability Insurance (Claims Made) policy during any portion of the period between the date of this Subcontract and the Retroactive Date of Subcontractor's current Claims Made Commercial General Liability Insurance policy, Subcontractor shall furnish a Certificate of Insurance showing that Subcontractor has purchased the Extended Reporting Period or supplemental Tail Endorsement under the previous policy extending the period for an unlimited time during which a claim may first be made.

G. With respect to whichever general liability policy form is furnished under subparagraphs (b) (c) or (d) above, Contractor, its officers, directors and employees and Owner, its officers, directors and employees shall be named as **Additional Insured.** The policy shall stipulate that the insurance afforded the Additional Insured shall apply as primary insurance and that any other insurance carried by Contractor, its officers, directors and employees or Owner will be excess only and will not contribute with this insurance.

H. **Automobile Liability Insurance** (Bodily Injury and Property Damage Liability) including coverage for all owned, hired and non-owned automobiles. The limits of liability shall not be less than $1,000,000 Combined Single Limit for each accident. If Subcontractor's General Liability Insurance is provided by a Commercial General Liability policy (either Occurrence or claims Made), then Subcontractor's Automobile Liability insurance policy shall include coverage for Automobile Contractual Liability.

I. Certificates of Insurance shall be furnished by Subcontractor to Contractor before any work is commenced hereunder by Subcontractor. The Certificate of Insurance shall provide that there will be no cancellation, reduction or modification of coverage without **thirty (30) days prior written notice** to Contractor. If Subcontractor does not comply with this section, Contractor may, at its option, provide insurance coverage to protect Owner and Contractor and charge Subcontractor for the cost of that insurance. The required insurance shall be subject to the approval of Contractor, but any acceptance of insurance certificates by Contractor shall not limit or relieve Subcontractor of the duties and responsibilities assumed by it under this Subcontract.

J. If higher limits or other forms of insurance are required in the General Contract or by owner, Subcontractor will comply with such requirements.

K. Contractor and Subcontractor waive all rights against each other and against all other subcontractors and Owner for loss or damage to the extent covered by Builder's Risk or any other property or equipment insurance applicable to the work, except such rights as they may have to the proceeds of such insurance. If the policies of insurance referred to in this Section require an endorsement or consent of the insurance company to provide for continued coverage where there is a waiver of subrogation, the owner's of such policies will cause them to be so endorsed or obtain such consent.

L. The requirement for carrying insurance hereunder is cumulative and shall not be in derogation of other provisions of this Subcontract.

WCC



Subcontractor

WEST COAST CONTRACTORS OF NEVADA, INC.

7785 WHITE FIR STREET
RENO, NV 89523
(775) 747-7774
FAX (775) 747-8887

PURCHASE ORDER NO. 824

THIS PURCHASE ORDER NO. MUST APPEAR ON ALL PACKAGES, PACKING SLIPS, INVOICES, ACKNOWLEDGMENT, CORRESPONDENCE, AND BILLS OF LADING.

SELLER: Merritt + Pardini
1701 Commerce
Tacoma, WA 98402-3207

PURCHASE ORDER NO. 824

*CODE:* 00124

ATTN: Scott Harm

PROJECT: Naval Post Graduate School Building 245 Extension, Monterey, CA
Contract No. N62474-00-C-3035

PHONE/FAX: P: 253-383-8700 F: 253-383-8728

DATE: June 29, 2001

SUPPLIER IS TO FURNISH THE FOLLOWING MATERIALS, EQUIPMENT, AND/OR SERVICES AS PER THE CONTRACT DOCUMENTS, WITH *PARTICULAR REFERENCE TO SECTIONS 01400 QUALITY CONTROL, AND BUY AMERICAN ACT.*

| DESCRIPTION | QUANTITY | UNIT PRICE | TOTAL |
|---|---|---|---|
| FURNISH ALL DISCIPLINES FOR ARCHITECTURAL, STRUCTURAL, CIVIL, LANDSCAPING, MECHANICAL AND ELECTRICAL DESIGNS FOR THE ABOVE REFERENCED PROJECT. | | | |
| COST BREAKDOWN: - ARCHITECTURE/PROJECT MANAGEMENT<br>- STRUCTURAL ENGINEERING<br>- CIVIL ENGINEERING<br>- LANDSCAPE ARCHITECTURE<br>- MECHANICAL ENGINEERING<br>- ELECTRICAL ENGINEERING | | | $140,000.00<br>$ 43,800.00<br>$ 20,550.00<br>$ 20,100.00<br>$ 8,500.00<br>$ 7,200.00 |
| INCLUSIONS: - SOILS ENGINEER SUBMITTAL REVIEW. | | | |
| EXCLUSIONS: NONE NOTED. | | | |
| TOTAL AMOUNT OF THIS PURCHASE ORDER | | | $240,150.00 |

F.O.B.: JOBSITE

DELIVERY DATE REQUIRED: CONTACT PROJECT SUPERINTENDENT

TERMS: SEE 13.0

SHIP TO: CONTACT PROJECT SUPERINTENDENT FOR SPECIFIC SHIPPING INSTRUCTIONS

INSPECTION: YES

THE UNDERSIGNED SELLER HEREBY ACCEPTS THE FOREGOING OFFER SOLELY ON THE TERMS AND CONDITIONS STATED ABOVE AND ON PAGE 2. (BUYER TO DISREGARD ANY ADDITIONAL OR DIFFERENT TERMS OF CONDITIONS PROPOSED BY SELLER EITHER HEREWITH OR OTHERWISE.)

WEST COAST CONTRACTORS OF NEVADA, INC.

MARIO R. RAMIREZ - PRESIDENT

MERRITT + PARDINI

SIGNATURE DATE

TYPED NAME AND TITLE

# Mt. Rose Heating & Air Conditioning Inc.

P.O. Box 8779
Reno, NV 89507-8779
310 Sunshine Ln.
Reno, NV 89502
(775) 329-8384
FAX (775) 329-8502
NV Lic. #32146
CA Lic. #770238

RECEIVED
AUG 10 2001
WEST COAST CONTRACTORS
RENO OFFICE

August 7, 2001

West Coast Contractors of Nevada
7785 White Fir St
Reno, NV 89523

Attention: Jim Miller

**RE: EXPANSION TO BUILDING 245 – MONTEREY, CA**

Dear Jim,
Please find the following preliminary SCOPE OF WORK as requested;

MT. ROSE HEATING to include:

- A) Roof mounted air handler.
- B) VAV boxes with reheat coils.
- C) Restroom exhaust fan/duct
- D) Exhaust fans @ Mechanical & Electrical rooms.
- E) Ductwork/ Air Distribution.
- F) Duct insulation (internal & external).
- G) "Split-Type" Air conditioning system and refer pipe @ Tele room.

WORK BY OTHERS:

- A) Temperature controls.
- B) Test/Balance.
- C) Chiller (new and relocation of existing).
- D) Pumps.
- E) Baseboard heaters/thermostats.
- F) Plumbing/piping.
- G) Piping insulation.
- H) Hot water valves/flex hoses.
- I) Condensate piping.
- J) Architectural flashing/sheet metal.

If you have any questions, please feel free to call me.

Sincerely,

Craig Argall
Mt. Rose Heating & Air Conditioning, Inc

CA/ree

71

# JOHNSON PLUMBING

CERTIFIED BACKFLOW TESTING

August 27, 2001

via fax: 747-8887

Jim Miller
West Coast Contractors
7785 White Fir Street
Reno, NV 89523

Subject: NPS Building 245 Expansion
Re: Plumbing Budget

Hello Jim:

The plumbing budget for the plumbing and hydronic work is $340,000. This would work with Mt. Rose's scope.

The hydronic heating system as proposed will have 2 supply/return loops on each floor, (1 loop for the baseboards and 1 loop for the heat exchangers); we may want to look at this again.

I have not covered the site/utility work or the test and balance.

Please contact me with any questions.

Sincerely,

Carl Johnson

Carl Johnson
Owner

1560 INDUSTRIAL WAY
SPARKS, NEVADA 89431
(775) 351-2293 (FAX) 351-2294
E MAIL plumbing@intercomm.com
NEVADA LICENSE 38358 ♦ CALIFORNIA LICENSE 555947

# Mt. Rose Heating & Air Conditioning Inc.

P.O. Box 8779
Reno, NV 89507-8779
310 Sunshine Ln.
Reno, NV 89502
(775) 329-8384
FAX (775) 329-8502
NV Lic. #32146
CA Lic. #770238

August 31, 2001

West Coast Contractors of Nevada, Inc.
7785 White Fir Street
Reno, NV 89523

RECEIVED
SEP 05 2001
WEST COAST CONTRACTORS
RENO OFFICE

Attention: Jim Miller

**RE: EXPANSION TO BUILDING 245 – MONTEREY, CALIFORNIA**

Gentlemen,
We are pleased to offer the following **BUDGET** proposal for your consideration:

**FURNISH & INSTALL**

"Dry-Side" heating, ventilation and air conditioning per preliminary plans & specifications prepared by the Department of the Navy, dated 02/15/2001.

We also **INCLUDE**: Roof mounted air handler (25 tons), VAV boxes with re-heat coils (26), restroom exhaust fan/ductwork, supply/return ductwork, air distribution, sidewall fans (2), duct insulation, "Split-Type" air conditioning unit @ telephone room (1½ tons), start-up and commissioning.

We **DO NOT** include: Temperature controls, test/balance, chiller (new/relocation), pumps, baseboard heaters/thermostats, plumbing/piping, piping insulation, chilled/hot water valves/hoses, condensate piping, architectural flashing/sheet metal, cutting, patching, painting, framing, permits, fees and bonds.

**FOR THE TOTAL SUM OF: $\underline{\$ 142,950.00}$**

If you should have any questions please don't hesitate to call.

Respectfully Submitted,

Craig Argall
Estimator
Mt. Rose Heating & Air Conditioning, Inc.

CA/kp

70

**Merritt+Pardini**

Architecture
Urban Design
Planning
Interior Design

October 26, 2001

Mr. Mario R. Ramirez
President
West Coast Contractors of Nevada, Inc.
7785 White Fir Street
Reno, NV 89523

**Re: Outstanding Contract Issues for Purchase Order No. 824**
Naval Post Graduate School Building 245 Extension, Monterey, CA
Merritt+Pardini Project 701-4091-002

Dear Mario,

Since we both have attempted on several occasions to contact each other and have had little success in doing so, I decided to take a more proactive approach to bringing closure to our outstanding contractual issues. Relying heavily on my personal relationship with WCC, Merritt+Pardini has proceeded on this project at substantial risk to our consultant team without a signed agreement or closure on the fees. Therefore, I am requesting your immediate attention to the following items.

On August 15, 2001, we forwarded to your office, via facsimile, a brief list of contractual modifications (attached) that our contract advisor recommended be included in the proposed agreement (Purchase Order No. 824). To date we have not received a response from your office in regard to these proposed modifications. Please review the items in question and provide us with a revised agreement or specific language modifications that would meet your ongoing needs.

Equally important is the outstanding issue of the design services fees transmitted to your office prior to the award of the Navy contract. In one of our recent conversations, you mentioned that you were aware that some fees were mistakenly not included in your proposal to the Navy. I understand that the cause for this confusion is based on the fact that some numbers in our original proposal (attached) "shifted" out-of-column and were therefore "missed' in the administrative process of submitting the proposal. This specific issue did not come to our attention until we received the aforementioned Purchase Order and discovered it did not correspond to our original request.

As with the contractual issues, Merritt+Pardini and our consultant team have continued progress on this project for the benefit of WCC and my personal history with your organization. During final contract negotiation, you noted, in a conversation with me, that the Navy encouraged WCC to add amounts to their

1701 Commerce
Tacoma, Washington
98402-3207
(253) 383-8700
(253) 383-8728 Fax

1000 Lenora St.
Suite 223
Seattle, Washington
98121-2720
(206) 622-9450
(206) 622-9462 Fax

Members of
The American
Institute of
Architects

(17)

Mr. Mario R. Ramirez
October 26, 2001
Page 2

submitted price, which were deemed by the Navy to be too low. Having heard this, I would find it difficult to not be awarded the original amount of the fees we submitted to your office.

Within the next week, we will be requested to submit to the Navy 100% design documents for a project that we not only do not have a signed contract for, but also do not have closure on the fees we submitted. I believe you would agree that Merritt+Pardini and its consultant team have acted in the best interest of WCC throughout the process to date and, therefore, respectfully request that you respond accordingly to bring closure to these items before the required submittal.

Thank you for your attention to these concerns. I have always enjoyed working with you and WCC and look forward to working together on more projects in the future. Please call me if you have any questions.

Sincerely,

Scott E. Harm
Principal

Attachments

cc: J. Cockerill

102601.10-MR

[redacted]

June 6, 2001

**Merritt+Pardini**
Architecture
Urban Design
Planning
Interior Design

**Memorandum:**

Mario;

The following is the revised number for the design portion of the Monterey Postgraduate school addition. The numbers have been revised to address the potential of the addition being constructed above ground on a pile supported slab-on-grade. In addition we have provided itemized projections of fees for construction services which may be evaluated at a later date dependant upon your specific requirements or the clients needs.

We have additional included additional funds within the Architectural portion which we feel are necessary to address the concerns expressed or implied by the Navy's continuing discussions.

**Architecture and Project Management:**

| | |
|---|---|
| Architectural Design Services | $115,000 |
| Construction Phase Services* | $25,000 |

**Structural Engineering:**

| | |
|---|---|
| Structural Engineering Design: | $33,600 |
| Pile foundation Design & Drafting | ——— |
| $5,000 | |
| Construction Phase Services | $10,200 |

**Civil Engineering:**

| | |
|---|---|
| Civil Engineering Design** | $18,700 |
| Site Visits** | $1,850 |

**Landscape Architecture:**

| | |
|---|---|
| Design Development | $4,200 |
| Construction Documents | $11,800 |
| Construction phase Services | $4,100 |

73

**Mechanical Engineering:**

| | |
|---|---|
| Mechanical Engineering Design*** ($28,600) | ——— |
| Construction Phase Services | $8,500 |

**Electrical Engineering:**

| | |
|---|---|
| Electrical Engineering Design*** ($20,900) | ——— |
| Construction Phase Services | $7,200 |

- Includes (1) site visit/month for 11 month construction schedule – does NOT include reimbursable expenses such as lodging (if required) or air fare

** Does not include off-site improvements, stormwater detention or treatment systems or site visits during construction.

*** Does NOT include any travel time as required/requested for site visits, review meetings or design presentations

11/13/01 TUE 08:45 FAX 253 383 8728 M + P / TACOMA 002

# WEST COAST CONTRACTORS OF NEVADA, INC.

7785 WHITE FIR STREET
RENO, NV 89523
(775) 747-7774
FAX (775) 747-8887

PURCHASE ORDER NO. 824

THIS PURCHASE ORDER NO. MUST APPEAR ON ALL PACKAGES, PACKING SLIPS, INVOICES, ACKNOWLEDGMENT, CORRESPONDENCE, AND BILLS OF LADING.

SELLER: Merritt + Pardini
1701 Commerce
Tacoma, WA 98402-3207

PURCHASE ORDER NO. 824

CODE: 00124

ATTN: Scott Harm

PROJECT: Naval Post Graduate School Building 245 Extension, Monterey, CA
Contract No. N62474-00-C-3035

PHONE/FAX: P: 253-383-8700 F: 253-383-8728

DATE: June 29, 2001

SUPPLIER IS TO FURNISH THE FOLLOWING MATERIALS, EQUIPMENT, AND/OR SERVICES AS PER THE CONTRACT DOCUMENTS, WITH PARTICULAR REFERENCE TO SECTIONS 01400 QUALITY CONTROL, AND BUY AMERICAN ACT.

| DESCRIPTION | QUANTITY | UNIT PRICE | TOTAL | |
|---|---|---|---|---|
| FURNISH ALL DISCIPLINES FOR ARCHITECTURAL, STRUCTURAL, CIVIL, LANDSCAPING, MECHANICAL AND ELECTRICAL DESIGNS FOR THE ABOVE REFERENCED PROJECT. | | | | |
| COST BREAKDOWN: - ARCHITECTURE/PROJECT MANAGEMENT | | | $140,000.00 | |
| - STRUCTURAL ENGINEERING | | | $ ~~40,000.00~~ → | 48,300 |
| - CIVIL ENGINEERING | | | $ 20,550.00 | |
| - LANDSCAPE ARCHITECTURE | | | $ 20,100.00 | |
| - MECHANICAL ENGINEERING | | | $ ~~8,500.00~~ → | 37,100 |
| - ELECTRICAL ENGINEERING | | | $ ~~7,200.00~~ → | 28,100 |
| * Reimbursable Expenses (see note below) | | | | |
| INCLUSIONS: - SOILS ENGINEER SUBMITTAL REVIEW. | | | | |
| EXCLUSIONS: NONE NOTED. | | | | |
| TOTAL AMOUNT OF THIS PURCHASE ORDER | | | ~~$246,450.00~~ → | 294,650.00 |

F.O.B.: JOBSITE

DELIVERY DATE REQUIRED: CONTACT PROJECT SUPERINTENDENT

TERMS: SEE 13.0

SHIP TO: CONTACT PROJECT SUPERINTENDENT FOR SPECIFIC SHIPPING INSTRUCTIONS

INSPECTION: YES

Approved by: RSB
(WCC) / (M+P)

THE UNDERSIGNED SELLER HEREBY ACCEPTS THE FOREGOING OFFER SOLELY ON THE TERMS AND CONDITIONS STATED ABOVE AND ON PAGE 2. (BUYER TO DISREGARD ANY ADDITIONAL OR DIFFERENT TERMS OF CONDITIONS PROPOSED BY SELLER EITHER HEREWITH OR OTHERWISE.)

WEST COAST CONTRACTORS OF NEVADA, INC.

MARIO R. RAMIREZ - PRESIDENT

MERRITT + PARDINI

SIGNATURE 11.9.01
DATE

Robert S. Berman, AICP - Managing Principal
TYPED NAME AND TITLE

Approved by:

RSB
(WCC) / (M+P) Amendment – This Purchase Order is amended to include the Merritt+Pardini letter to Mr. Ramirez dated August 15, 2001 (attached) and the suggested modifications identified therein.

RSB
(WCC) / (M+P) *Reimbursable Expenses (including reprographics, travel, and geotechnical engineering) are in addition to the Total Amount of this Purchase Order.

— GENERAL ENGINEERING AND BUILDING —
NEVADA LIC. #25486 • NEVADA LIC. #38054 • CALIFORNIA LIC. #531739

WCC-004

78

RECEIVED
APR 29 2002
WEST COAST CONTRACTORS
RENO OFFICE

Merritt+Pardini
A Parametrix Company
Architecture
Urban Design
Planning
Interior Design

April 24, 2002

Mr. Bert Lawrence
Contracting Officer
Department of the Navy
Engineering Field Activity West
Pacific Plaza
2001 Junipero Serra Boulevard, #600
Daly City, CA 94014-1976

Mr. Mario Ramirez
President
West Coast Contractors of Nevada
7785 White Fir Street
Reno, NV 89523

Re: **Naval Postgraduate School Building 245 Extension (Monterey, CA)**
Request for Equitable Adjustment for Project Funding
Merritt+Pardini Project 701-4091-002

Dear Bert and Mario,

This is our formal Request for Equitable Adjustment (REA) for the above-referenced project. We are requesting payment in the amount of $37,500 for services rendered in January and February 2002. In addition, it is our recommendation that West Coast Contractors (WCC) be compensated for the additional printing and shipping costs they incurred as a result of this discrepancy. They can provide the sum for these charges.

The additional amount requested is for several technical staff members reworking specifications based on comments received from the Navy that, in our opinion, were not consistent with the original requirements of the published Request for Proposal (RFP). In addition, this REA should also include reimbursable expenses incurred by WCC for the printing and shipping of multiple submittals as a secondary result of the specification discrepancies. Our opinion is that both the 100% Redesign and Pre-Final submittals were direct results of the change in requirements as outlined below.

## Background Information

The RFP specified the form of specifications that were provided in the RFP and the form that construction specifications were to take. The following paragraphs are statements taken from the RFP. A photocopy of the applicable section is attached for your reference (Attachment A). Please pay particular attention to the "Prescriptive" specifications and the requirements for the construction specifications.

1119 Pacific Avenue
Suite 1600
Tacoma, WA 98402
(253) 383-8700
(253) 383-8728 Fax

1000 Lenora St.
Suite 223
Seattle, WA 98121
(206) 622-9450
(206) 622-9462 Fax

Members of
The American
Institute of
Architects

(31)
60

*Section 01331, Paragraph c., Specifications reads:*

*(1) There are two types of specifications included in the RFP: (1) Performance specifications containing performance requirements for materials, products and systems which must be met and criteria for verifying compliance (2) Prescriptive Specifications containing specific requirements which describe materials, products, systems, sizes, ratios, fabrications, quality of workmanship, etc.* ***Options are frequently permitted*** *but are limited to those included in the specification.*

*(2) Specifications for construction shall be provided by the Contractor in the Construction Specification Institute (CSI) 16 Division, three part section format. Specifications shall be prescriptive and shall be in compliance with the requirements of the RFP and with those items specifically identified in the accepted proposal. Where manufacturers' brand names, model numbers or other product designations are included in the prescriptive specifications, submit manufacturer's product data indicating compliance with the requirements of the RFP along with the design submittal. The specifications shall list all applicable standards, catalog cuts, samples, shop drawings, test certificates and submittal requirements during construction. Include a Table of Contents.*

## Discussion Points for REA

1. The Navy's own definition of Prescriptive Specifications, as used in paragraph (1) above, includes the phrase "options are frequently permitted," which leaves the option for the production of "non-proprietary" specifications in the general term of Prescriptive Specifications.

2. Paragraph (2) clearly states that the construction specifications shall be prescriptive and shall be in compliance with the RFP. The paragraph continues to state that not only shall the specification be in compliance with the RFP but shall [be in compliance] " . . . with those items **specifically** identified in the accepted proposal." Therefore, if specific manufacturers and model numbers were NOT presented in the accepted proposal, the construction specification would not be required to identify specific manufacturers and/or model numbers.

3. Paragraph (2) also states, "*Where manufacturers' brand names, model numbers or other product designations are included in the prescriptive specifications, submit manufacturer's product data indicating compliance with the requirements of the RFP along with the design submittal.*" The operative word in this requirement is "**where.**" If the RFP required that the construction specifications "**shall**" in <u>all</u> <u>cases</u> include a specific manufacturer's name, etc., then we would have budgeted the time to identify, copy, collate, and bind all the cut sheets ultimately required by Navy personnel for final acceptance. The use of the word "where" appeared to leave to the General Contractor the alternative of when and where to identify specific manufacturers, thus leaving some flexibility to adjust the project construction budget.

4. Finally, the use of the term "Prescriptive" specifications within CSI format is ambiguous. As referenced in Attachment B, the Construction Specification Institute identifies four methods of specifying: descriptive, performance, reference standard, and proprietary. Note there is no definition for "prescriptive" specifications within the referenced CSI guidelines. In addition, as noted in Attachment C, within the Navy's own *A/E Guide*, Section 8.15, Specification Format (Design-Build Projects), "... the Contractor's A-E is required to provide **Proprietary** Specifications to identify the actual products and systems to be used ..." Clearly, given the use of the term "Proprietary" in the Navy's own *A/E Guide*, this indicates a prior knowledge of the term and the implications of such a requirement. It is our position that the contract team specific to this project determined that "Proprietary" was not what was needed in this specific project.

## Conclusion

It is our position that the RFP was ambiguous in its description of the requirements for specifications and used terminology that was inconsistent with the Navy's own practice and of that common in the industry. While we acknowledge that the final product submitted to the Navy met all the requirements of a proprietary specification, this was not the specification outlined in the published RFP nor the specification we budgeted for on this project.

We are therefore requesting remuneration in the sum noted above plus reimbursable costs incurred by WCC for the production and distribution of the submittals that were rejected due to perceived deficiencies in the previously submitted specifications.

As we await your response to this request, we will continue to provide the professional services necessary to support this project until its conclusion. Thank you for your assistance. Please contact me at 253-383-8700 to discuss this matter further.

Sincerely,

Scott E. Harm
Principal

cc: R. Berman
J. Cockerill
M+P Finance

recd 17 Oct 02

WEST COAST CONTRACTORS of Nevada, Inc.

7785 WHITE FIR STREET
RENO, NV 89523
(775) 747-7774
FAX (775) 747-8887

October 16, 2002

ROICC
511 Gardners Road, Bldg 426
Naval Post Graduate School
Monterey, CA. 93943
831-656-3454

Attention: Kathy Norgaard

Reference: Naval Post Graduate School Building 245 Extension
N62474-00-C-3035

Subject: WCC#-17034, Request for Equitable Adjustment #3, Foundation Elevation Change

Ms. Norgaard,

The RFP drawings indicated the foundation grade to be 1 foot below first floor top of slab and were the basis for preparing our bid proposal. During the design process and design review these elevations changed to 3 feet below finish floor typically with exception to grid AA at which the elevation changed to 4'-8" below finish floor between grids 1 and 2.3. The elevation changes considerably impacting the construction costs as well as the scheduled duration of the building foundation. The design changes are explained in an attached letter from AHBL. The construction impacts based on the RFP verses the approved design are as follows.

- The RFP showed a typical building foundation, which was the basis in the preparation of our bid proposal. The construction method would have consisted of excavating the site to a sub grade 2'-0" below finish floor and compacting sub grade per contract specifications. Once sub grade was completed the finish grade would consist of a 1'-4" lift of structural fill material placed and compacted in lifts per the contract specifications. Once finish grade was completed the caissons would be surveyed and installed. At the completion of the caissons, the grade beams and pier caps would be neat lined excavated and concrete placed. Once the grade beams and pier caps have been completed the vapor barrier would be installed an edge form set and the slab-on-grade concrete placed and finished.

- The actual construction consisted of additional excavation of the site to a sub grade 4'-0" below finish floor this would allow for the safe drilling of the caissons now 3 to 4 feet below the sub grade. After sub grade was completed the pier caps had to be additionally over excavated allowing a safe working area 3 to 4 feet below sub grade for the drilling and placing of the caissons. Once the caissons were completed the grade beams and pier caps had to be over excavated allowing for the unforeseen and additional forming of the pier caps and grade beams. After the pier caps and grade beam forms were stripped a additional 3'-0"x9"stem wall around the buildings west, north, and east perimeter and a additional 4'-8"x9" stem wall along the south side of the building between grids 1 and 2 had to be formed and



15
30

WEST COAST CONTRACTORS of Nevada, Inc.

7785 WHITE FIR STREET
RENO, NV 89523
(775) 747-7774
FAX (775) 747-8887

additional concrete placed, this brought the building foundation to the finish floor grade. Once the stem wall was completed and stripped the interior of the building had to be back filled to finish grade. All additional backfilling had to be stockpiled outside of the building and placed within the building perimeter with the use of added equipment on the outer perimeter of the building as well as additional equipment and personnel in the interior of the building. The added perimeter stem wall prevented us from entering the building interior and backfilling as originally estimated per the RFP.

The elevation changes also made significant impacts to our original schedule. The additional time needed to complete the unforeseen forming of the pier caps, grade beams, and stem walls, started 3-18-02 and completed 4-25-02, was an additional 23days. The additional time needed to complete the unforeseen backfilling, started 4-23-02 and completed 5-01-02, was an additional 7days. The impact to the construction schedule was a total of 28days.

I ask that you review the documentation provided and take consideration to our Request for Equitable Adjustment.

Please contact me at your earliest convenience if you should have any questions or required any additional information.

Sincerely,
West Coast Contractors of Nevada, Inc.

Jim Miller
Project CQC

PROPOSAL/ESTIMATE FOR CONTRACT MODIFICATION
Modified form NAVFAC 4330/43 (8/88)

Date: 10/16/2002

CONTRACT TITLE:
Design/Build Naval Postgraduate School Bldg 245 Extension

CONTRACT NO: N62474 -C- 3035
PCO NO:

ROICC OFFICE
NAVAL POSTGRADUATE SCHOOL, MONTEREY

Work Site:

DESCRIPTION:
REA-03 Foundation Elevation Change

| PRIME CONTRACTOR'S WORK | | | | | | Revisions/Comments |
|---|---|---|---|---|---|---|
| 1. Direct Materials | | | $24,425.39 | | | |
| 2. Sales Tax on Materials | % of line 1 | 7.25% | $1,770.84 | | | |
| 3. Direct Labor | | | $94,987.64 | | | |
| 4. Insurance, Taxes, and Fringe Benefits | % of line 3 | 0.00% | $0.00 | | | Included in line 3 |
| 5. Rental Equipment | | | $11,586.00 | | | |
| 6. Sales Tax on Rental Equipment | % of line 5 | 7.25% | $839.99 | | | |
| 7. Equipment Ownership and Operating Expenses | | | $0.00 | | | |
| 8. SUBTOTAL (add lines 1 - 7) | | | | $133,609.85 | | |
| 9. Field Overhead | 10% of line 8 | 10.00% | $13,360.99 | | | |
| 10. SUBTOTAL (Add Lines 8 & 9) | | | | $146,970.84 | | |

Prime's Remark

| SUB-CONTRACTOR'S WORK | | | | | |
|---|---|---|---|---|---|
| 11. Direct Materials | | | $0.00 | | |
| 12. Sales Tax on Materials | % of line 11 | 0.00% | $0.00 | | |
| 13. Direct Labor | | | $7,140.00 | | |
| 14. Insurance, Taxes, and Fringe Benefits | % of line 13 | 0.00% | $0.00 | | |
| 15. Rental Equipment | | | $0.00 | | |
| 16. Sales Tax on Rental Equipment | % of line 15 | 0.00% | $0.00 | | |
| Equipment Ownership and Operating Expenses | | | $0.00 | | |
| . SUBTOTAL (add lines 11 -17) | | | | $7,140.00 | |
| 19. Field Overhead | 10% of line 18 | 0.00% | $0.00 | | |
| 20. SUBTOTAL (Add Lines 18 & 19) | | | | $7,140.00 | |
| 21. Home Office Overhead | 3% of line 20 | 0.00% | $0.00 | | |
| 22. Profit | % of line 20 | 0.00% | $0.00 | | |
| 23. SUBTOTAL (Add Lines 20 - 22) | | | | $7,140.00 | |

Subcontractor's Remark

| SUMMARY | | | | | |
|---|---|---|---|---|---|
| 24. Prime Contractor's Work (from line 10) | | | $146,970.84 | | |
| 25. Sub-contractor's work (from line 23) | | | $7,140.00 | | |
| 26. SUBTOTAL (Add Lines 24 & 25) | | | | $154,110.84 | |
| 27. Prime Overhead on Sub-contractor | 5% of line 25 | 5.00% | $357.00 | | |
| 28. Prime's Home Office Overhead | 3% of line 24 | 3.00% | $4,409.13 | | |
| 29. Prime's Profit | % of line 26 | 7.00% | $10,787.76 | | |
| 30. SUBTOTAL (Add Lines 26 - 29) | | | | $169,664.72 | |
| 31. Prime Contractor's Bond Premium | % of line 30 | 0.65% | $1,102.82 | | |
| 32 TOTAL COST (Add Lines 30 & 31) | | | | $170,767.54 | |

Estimated Time Extension and Justification

Prime Contractor Name: West Coast Contractors of Nevada, Inc.
Sub-Contractor Name: AHBL

Signature & Title of Preparer: [signature] PROJECT CQC

Date: 10/16/02

0105-LF-005-6900

## INSTRUCTIONS ~R PREPARING PROPOSAL/ESTIMATE FOR CONT~T MODIFICATION

All Contract Modification Proposals shall be addressed to the Resident Officer in Charge of Construction. Proposals must clearly state the conditions and scope of the modification and shall be accompanied by a breakdown of cost, as indicated. Lump sum costs will not be accepted in either the prime or su-contractor's breakdown of direct cost. The total cost for labor, material, and equipment rental (or ownership) for each item shall be transferred to the corresponding item on the front of this form. At the contractor's option, the overhead rates printed on the front of this form may be used for proposals under $500,000 in lieu of detailed itemized estimates of verhead costs. The proposal should also include a request for an extension of time, in calendar days, only if overall completion of ntract is impacted by the proposed modification. The contractor shall not proceed with any of the work included in the modification rior to receipt of an executed modification of contract (SF30).

**BREAKDOWN OF DIRECT COSTS** Contract No.: N62474-00-C-3035 Date: 10/16/2002

| ITEMS OF WORK FOR Prime Contractor | QTY | UNIT | MATERIAL Unit Cost | MATERIAL Total Cost | LABOR Unit Cost | LABOR Total Cost | R O | EQUIPMENT Hours | EQUIPMENT Rate | EQUIPMENT Total |
|---|---|---|---|---|---|---|---|---|---|---|
| Footings/Gradebeams | 3220 | sf | | $ - | | $ - | | | | $ - |
| 3/4" BB Plywood | 115 | ea | $ 22.00 | $ 2,530.00 | | $ - | | | | $ - |
| 2x4 DF | 4629 | lf | $ 0.39 | $ 1,805.31 | | $ - | | | | $ - |
| PC-1 | 13 | ea | | $ - | | $ - | | | | $ - |
| 3/4" BB Plywood | 18 | ea | $ 22.00 | $ 396.00 | | $ - | | | | $ - |
| 2x4 DF | 1248 | lf | $ 0.39 | $ 486.72 | | $ - | | | | $ - |
| PC-2 | 11 | ea | | $ - | | $ - | | | | $ - |
| 3/4" BB Plywood | 38 | ea | $ 22.00 | $ 836.00 | | $ - | | | | $ - |
| 2x4 DF | 1619 | lf | $ 0.39 | $ 631.41 | | $ - | | | | $ - |
| Form/Strip Footings/Gradebeams | 409.7 | hr | | $ - | $ 49.50 | $ 20,280.15 | | | | $ - |
| STS | 20280 | ls | $ 0.15 | $ 3,042.00 | | $ - | | | | $ - |
| | | | | $ - | | $ - | | | | $ - |
| Form Stem Wall | 590 | lf | | $ - | | $ - | | | | $ - |
| 3'-0" Stem Wall | 510 | lf | | $ - | | $ - | | | | $ - |
| 3/4" BB Plywood | 68 | ea | $ 14.40 | $ 979.20 | | $ - | | | | $ - |
| 2x4 DF | 3213 | lf | $ 0.15 | $ 481.95 | | $ - | | | | $ - |
| 4'-8" Stem Wall | 80 | lf | | $ - | | $ - | | | | $ - |
| 3/4" BB Plywood | 14 | ea | $ 14.40 | $ 201.60 | | $ - | | | | $ - |
| 2x4 DF | 672 | lf | $ 0.15 | $ 100.80 | | $ - | | | | $ - |
| Reinforcing | 2106 | lbs | $ 0.40 | $ 842.40 | $ 0.45 | $ 947.70 | | | | $ - |
| Concrete | 27 | cy | $ 106.00 | $ 2,862.00 | | $ - | | | | $ - |
| Pump | 4 | hr | $ 120.00 | $ 480.00 | | $ - | | | | $ - |
| Form/Strip/Place&Finish | 335.35 | hr | | $ - | $ 49.50 | $ 16,599.83 | | | | $ - |
| ~S | 16600 | ls | $ 0.15 | $ 2,490.00 | | $ - | | | | $ - |
| | | | | $ - | | $ - | | | | $ - |
| avate & Backfill Ftg/GB | | | | $ - | | $ - | | | | $ - |
| Foreman | 62 | hr | | $ - | $ 65.01 | $ 4,030.62 | | | | $ - |
| Operator | 62 | hr | | $ - | $ 63.51 | $ 3,937.62 | | | | $ - |
| Laborer (2ea) | 124 | hr | | $ - | $ 41.95 | $ 5,201.80 | | | | $ - |
| TD | 62 | hr | | $ - | $ 49.68 | $ 3,080.16 | | | | $ - |
| PU w/ Small Tools | | | | $ - | | $ - | | 62 | $ 10.00 | $ 620.00 |
| Excavator | | | | $ - | | $ - | | 62 | $ 55.00 | $ 3,410.00 |
| Rammax (2ea) | | | | $ - | | $ - | | 124 | $ 25.00 | $ 3,100.00 |
| Water Truck | | | | $ - | | $ - | | 62 | $ 28.00 | $ 1,736.00 |
| | | | | $ - | | $ - | | | | $ - |
| Backfill Pad additional time | | | | $ - | | $ - | | | | $ - |
| Foreman | 16 | hr | | $ - | $ 65.01 | $ 1,040.16 | | | | $ - |
| Operator (2ea) | 32 | hr | | $ - | $ 63.51 | $ 2,032.32 | | | | $ - |
| Laborer (2ea) | 32 | hr | | $ - | $ 41.95 | $ 1,342.40 | | | | $ - |
| TD | 16 | hr | | $ - | $ 49.68 | $ 794.88 | | | | $ - |
| PU w/ Small Tools | | | | $ - | | $ - | | 16 | $ 10.00 | $ 160.00 |
| Excavator | | | | $ - | | $ - | | 16 | $ 55.00 | $ 880.00 |
| Bobcat | | | | $ - | | $ - | | 16 | $ 27.00 | $ 432.00 |
| Rammax (2ea) | | | | $ - | | $ - | | 32 | $ 25.00 | $ 800.00 |
| Water Truck | | | | $ - | | $ - | | 16 | $ 28.00 | $ 448.00 |
| Field Overhead/Subsistance | 1 | mo | | $ 6,260.00 | | $ - | | | $ - | $ - |
| Superintendent | 280 | hr | | $ - | $ 55.00 | $ 15,400.00 | | | $ - | $ - |
| Quality Control Manager | 280 | hr | | $ - | $ 65.00 | $ 18,200.00 | | | $ - | $ - |
| Field Secretary | 140 | hr | | $ - | $ 15.00 | $ 2,100.00 | | | $ - | $ - |
| DIRECT Prime Contractor's | TOTALS | | | $24,425.39 | | $ 94,987.64 | R | Total (Rental) | | $ 11,586.00 |
| | | | | | | | O | Total (Owned) | | |

| ITEMS OF WORK FOR Sub-contractor | QTY | UNIT | MATERIAL Unit Cost | MATERIAL Total Cost | LABOR Unit Cost | LABOR Total Cost | R O | EQUIPMENT Days | EQUIPMENT Rate | EQUIPMENT Total |
|---|---|---|---|---|---|---|---|---|---|---|
| AHBL | | | | $ - | | $ - | | | | $ - |
| Principle | 3 | hr | | $ - | $ 130.00 | $ 390.00 | | | | $ - |
| iect Engineer | 58 | hr | | $ - | $ 85.00 | $ 4,930.00 | | | | $ - |
| ter | 28 | hr | | $ - | $ 65.00 | $ 1,820.00 | | | | $ - |
| NAVFAC 4330/43 (Back) | | | | $ - | | $ - | | | | $ - |
| DIRECT Sub-contractor's | TOTALS | | | $ - | | $ 7,140.00 | R | Total (Rental) | | |
| | | | | | | | O | Total (Owned) | | |

PROJECT: #824 NPS MONTEREY
PAGE #: 1

DESCRIPTION: REA-03
DATE:

BID QUANTITY: FIELD OVERHEAD / SUBSISTANCE
ESTIMATOR: Mill[illegible]

| DESCRIPTION | QUANTITY | S T & S MATERIALS | LABOR | SUB | TOTAL |
|---|---|---|---|---|---|
| OFFICE TRAILER | 1 MO. | 750 | | | 750 |
| TOILETS | 1 MO. | 280 | | | 280 |
| PHONES | 1 MO. | 400 | | | 400 |
| HOTEL / LODGING 2 MEN | 1 MO. | 2200 | | | 2200 |
| MEALS 2 MEN @ 30 PER DAY = 60.00 x 28 DAY | 1 MO. | 1680 | | | 1680 |
| TRANSPORTATION | 1 MO. | 950 | | | 950 |
| TOTAL | | | | | 6260.00 |

WCC - 001 / \TION SHEET

AHBL

PRINCIPALS:
GEOFFREY HODSDON, P.E., S.E.
ALLAN E. BESSETTE, P.E., S.E.
GEORGE J. LINDSAY, P.E.
SEAN M. COMFORT, P.E.
PAUL B. McCORMICK, P.E., S.E.
THOMAS R. HICKS, P.E., S.E.
DOREEN S. GAVIN, P.E.
LEN ZICKLER, AICP, ASLA
JOHN W. BECKER, SR., PLS

ASSOCIATES:
DANIEL L. BOOTH, P.E., S.E.
JAMES R. CARLSEN, P.E.
MICHAEL D. KATTERMANN, AICP

August 1, 2002

Mr. Jim Miller
West Coast Contractors, Inc.
Construction Field Office
Sloat and 7th Avenue – NPS
Monterey, CA 93943

Project: Naval Postgraduate School Bldg 245 Expansion, Our File No. 201178.20, Task 22
Subject: Additional Services due to Change in Grade Beam Elevations from RFP.

Dear Jim:

As requested, we are providing an explanation of why the concrete grade beam elevations were lowered from what was shown on the RFP documents for your use in requesting additional compensation from the owner. We have also included an engineering services matrix showing the additional engineering design fees related to these unforeseen conditions and changes to the design documents, for incorporation into your change order.

The architectural wall sections and structural details in the RFP drawings both show the typical exterior wall grade beam and pile caps as one foot below first floor top of slab. As this is the most economical and structurally preferred condition, the structural design and detailing were substantially completed based on this being the case. However, as the civil design progressed it became apparent that to accommodate the handicap access ramp on the north side of the building and the parking lot on the west side of the building that the finished grades immediately adjacent to the building structure would need to be lowered.

This change resulted in the concrete grade beams and pile caps needing to be lowered to remain below the finished grades adjacent to the building structure. The top of concrete grade beam was lowered to three feet below finished floor slab around the typical building perimeter with the exception of grid AA. Along grid AA between grids 2.3 and 4, the top of grade beam remained one foot below finished floor as shown on the RFP documents. At grid AA between grids 1 and 2.3, the grade beams and pile caps were four feet, eight inches below finished floor to accommodate the grades at the adjacent service drive. Additionally, to provide appropriate lateral bracing of the pile caps, the interior concrete brace beams had to slope between the interior column pile caps and the exterior wall pile caps that were at a lower elevation.

2215 NORTH 30TH STREET SUITE 300 TACOMA, WA 98403 PH:(253) 383-2422 FAX:(253) 383-2572 www.ahbl.com

The structural design was greatly impacted by the changes in elevation of the concrete grade beams. Additional structural calculations were required to review the impact of this change after the structural design and analysis were substantially complete. Many of these calculations and discussion were included in our response to review comments by DASSE Design, Inc. and later incorporated into the final revised structural calculation submittal. Furthermore, structural details had to be modified to reflect the various grade beam elevation changes. As shown in the enclosed detailed engineering services matrix, we estimate these additional design fees to be $7,140.

Please call if you have any questions or if we can be of further assistance.

Sincerely,

Thomas R. Hicks, P.E.
Vice President

TRH/jlg

Enclosures

c. Accounting
miller08pro01

*Engineering Services Matrix*

Building 245 Addition - Modify Grade Beam Elevations

201178.21 Task 22

| Tasks | Manhours | | | |
|---|---|---|---|---|
| | Principal | Proj. Manager | Proj. Eng. | Drafter |
| Update structural analysis of concrete shear walls to reflect increased height | 1 | | 16 | |
| Determine new overturning forces and reactions at base of shear wall for foundation design and check connections | | | 12 | |
| Coordinate with adjacent finished civil grades and update structural foundation drawings to show new grade beam and pile cap elevations | | | 4 | 4 |
| Revise structural details to reflect lower grade beam elevations | 1 | | 12 | 12 |
| Provide new foundation details at steps in concrete grade beam elevations | | | 12 | 12 |
| Respond to DASSE review comments regarding impact of grade beam elevation changes to foundation and shear wall design | 1 | | 2 | |
| | 3 | 0 | 58 | 28 |

*Structural Engineering Fees*

| | | | |
|---|---|---|---|
| Principal | 3 | @ $130/hr | $390 |
| Project Manager | 0 | @ $110/hr | $0 |
| Project Engineer | 58 | @ $85/hr | $4,930 |
| Drafter | 28 | @ $65/hr | $1,820 |
| **Total** | | | $7,140 |

**WEST COAST CONTRACTORS** of Nevada, Inc.

7785 WHITE FIR STREET
RENO, NV 89523
(775) 747-7774
FAX (775) 747-8887

November 5, 2002

ROICC
511 Gardners Road, Bldg 426
Naval Post Graduate School
Monterey, CA. 93943
831-656-3454

Attention: Kathy Norgaard

Reference: Naval Post Graduate School Building 245 Extension
N62474-00-C-3035

Subject: WCC#-17035, Request for Equitable Adjustment #4, Mechanical Equipment

Ms. Norgaard,

The RFP drawings indicated using a 15ton chiller and 6500 CFM air-handling unit. The RFP design criteria also indicated a computer load of 3 W/SF and 1.5 W/SF of lighting within the classroom spaces as well as a total building occupancy load of 281. In order to meet the design cooling temperature of 74 F, a 40-ton chiller and a 14,000 CFM air-handling unit were required. The HVAC system including the chiller, chilled water piping, chilled water pumps, coils, handler, VAV terminals, and ductwork were designed larger than indicated in the RFP drawings. We have attached a cost breakdown for your review and consideration detailing the additional cost impacts for the equipment upsizing.

I ask that you review the following attached documentation and take consideration to our Request for Equitable Adjustment.

Please contact me at your earliest convenience if you should have any questions or required any additional information.

Sincerely,
West Coast Contractors of Nevada, Inc.

Jim Miller
Project Quality Control Manager