PROPOSAL/ESTIMATE FOR CONTRACT MODIFICATION
Modified form NAVFAC 4330/43 (8/88)

Date: 11/4/2002

CONTRACT TITLE:
Design/Build Naval Postgraduate School Bldg 245 Extension

CONTRACT NO: N62474 -C- 3035
PCO NO:

ROICC OFFICE
NAVAL POSTGRADUATE SCHOOL, MONTEREY

Work Site:

DESCRIPTION:
REA-04, Mechanical Equipement

| PRIME CONTRACTOR'S WORK | | | | | Revisions/Comments |
|---|---|---|---|---|---|
| 1. Direct Materials | | | $0.00 | | |
| 2. Sales Tax on Materials | % of line 1 | 0.00% | $0.00 | | |
| 3. Direct Labor | | | $0.00 | | |
| 4. Insurance, Taxes, and Fringe Benefits | % of line 3 | 0.00% | $0.00 | | |
| 5. Rental Equipment | | | $0.00 | | |
| 6. Sales Tax on Rental Equipment | % of line 5 | 0.00% | $0.00 | | |
| 7. Equipment Ownership and Operating Expenses | | | $0.00 | | |
| 8. SUBTOTAL (add lines 1 - 7) | | | | $0.00 | |
| 9. Field Overhead | 10% of line 8 | 0.00% | $0.00 | | |
| 10. SUBTOTAL (Add Lines 8 & 9) | | | | $0.00 | |

Prime's Remark

| SUB-CONTRACTOR'S WORK | | | | | |
|---|---|---|---|---|---|
| 11. Direct Materials | | | $56,679.00 | | |
| 12. Sales Tax on Materials | % of line 11 | 0.00% | $0.00 | | Included in 11 |
| 13. Direct Labor | | | $19,525.00 | | |
| 14. Insurance, Taxes, and Fringe Benefits | % of line 13 | 0.00% | $0.00 | | Included in 13 |
| 15. Rental Equipment | | | $0.00 | | |
| 16. Sales Tax on Rental Equipment | % of line 15 | 0.00% | $0.00 | | |
| 17. Equipment Ownership and Operating Expenses | | | $0.00 | | |
| 18. SUBTOTAL (add lines 11 -17) | | | | $76,204.00 | |
| 19. Field Overhead | 10% of line 18 | 10.00% | $7,620.40 | | |
| 20. SUBTOTAL (Add Lines 18 & 19) | | | | $83,824.40 | |
| 21. Home Office Overhead | 3% of line 20 | 3.00% | $2,514.73 | | |
| 22. Profit | % of line 20 | 15.00% | $12,573.66 | | |
| 23. SUBTOTAL (Add Lines 20 - 22) | | | | $98,912.79 | |

Subcontractor's Remark

| SUMMARY | | | | | |
|---|---|---|---|---|---|
| 24. Prime Contractor's Work (from line 10) | | | $0.00 | | |
| 25. Sub-contractor's work (from line 23) | | | $98,912.79 | | |
| 26. SUBTOTAL (Add Lines 24 & 25) | | | | $98,912.79 | |
| 27. Prime Overhead on Sub-contractor | 5% of line 25 | 5.00% | $4,945.64 | | |
| 28. Prime's Home Office Overhead | 3% of line 24 | 0.00% | $0.00 | | |
| 29. Prime's Profit | % of line 26 | 10.00% | $9,891.28 | | |
| 30. SUBTOTAL (Add Lines 26 - 29) | | | | $113,749.71 | |
| 31. Prime Contractor's Bond Premium | % of line 30 | 0.65% | $739.37 | | |
| 32 TOTAL COST (Add Lines 30 & 31) | | | | $114,489.08 | |

Estimated Time Extension and Justification

Prime Contractor Name: West Coast Contractors of Nevada, Inc.
Sub-Contractor Name: Johnson Plumbing, Mt. Rose Heating & AC

Signature & Title of Preparer: [signature] PROJECT CQC

Date: 11/5/2002

1 0105-LF-005-8900

## INSTRUCTIONS FOR PREPARING PROPOSAL/ESTIMATE FOR CONTRACT MODIFICATION

ontract Modification Proposals shall be addressed to the Resident Officer in Charge of Construction. Proposals must clearly state the conditions and scope of the modification and shall be accompanied by a breakdown of cost, as indicated. Lump sum costs will not be accepted in either the prime or su-contractor's breakdown of direct cost. The total cost for labor, material, and equipment rental (or ownership) for each item shall be transferred to the corresponding item on the front of this form. At the contractor's option, the overhead rates printed on the front of this form may be used for proposals under $500,000 in lieu of detailed itemized estimates of overhead costs. The proposal should also include a request for an extension of time, in calendar days, only if overall completion of contract is impacted by the proposed modification. The contractor shall not proceed with any of the work included in the modification prior to receipt of an executed modification of contract (SF30).

**BREAKDOWN OF DIRECT COSTS** **Contract No.:** N62474-00-C-3035 **Date:** 11/4/2002

| ITEMS OF WORK FOR | QTY | UNIT | MATERIAL | | LABOR | | R | EQUIPMENT | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Prime Contractor | | | Unit Cost | Total Cost | Unit Cost | Total Cost | O | Days | Rate | Total |
| | | | | $ - | | $ - | | | | $ - |
| | | | | $ - | | $ - | | | | $ - |
| | | | | $ - | | $ - | | | | $ - |
| | | | | $ - | | $ - | | | | $ - |
| | | | | $ - | | $ - | | | | $ - |
| | | | | $ - | | $ - | | | | $ - |
| | | | | $ - | | $ - | | | | $ - |
| | | | | $ - | | $ - | | | | $ - |
| | | | | $ - | | $ - | | | | $ - |
| | | | | $ - | | $ - | | | | $ - |
| | | | | $ - | | $ - | | | | $ - |
| | | | | $ - | | $ - | | | | $ - |
| | | | | $ - | | $ - | | | | $ - |
| | | | | $ - | | $ - | | | | $ - |
| | | | | $ - | | $ - | | | | $ - |
| | | | | $ - | | $ - | | | | $ - |
| | | | | $ - | | $ - | | | | $ - |
| | | | | $ - | | $ - | | | | $ - |
| **DIRECT Prime Contractor's** | **TOTALS** | | | $ - | | $ - | R | Total (Rental) | | |
| | | | | | | | O | Total (Owned) | | |

| ITEMS OF WORK FOR | QTY | UNIT | MATERIAL | | LABOR | | R | EQUIPMENT | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Sub-contractor | | | Unit Cost | Total Cost | Unit Cost | Total Cost | O | Days | Rate | Total |
| **Upgrade Chiller from 15-40 ton** | | | | $ - | | $ - | | | | $ - |
| **Including Control Package** | 1 | ea | | $ 37,504.00 | | $ - | | | | $ - |
| | | | | $ - | | $ - | | | | $ - |
| **Upgrade Air Handler Capacity** | | | | $ - | | $ - | | | | $ - |
| **from 6500CFM to 14000CFM** | 1 | ea | | $ 6,217.00 | | $ - | | | | $ - |
| | 16 | hr | | $ - | $ 50.00 | $ 800.00 | | | | $ - |
| **Increase Duct Size for larger Capacity** | 1 | ls | | $ 3,627.00 | | $ - | | | | $ - |
| | 244 | hr | | $ - | $ 50.00 | $ 12,200.00 | | | | $ - |
| **Increase Sound Attenuators Capacity** | 1 | ls | | $ 2,400.00 | | $ - | | | | $ - |
| Additional Duct @ roof | 1 | ls | | $ 3,265.00 | | $ - | | | | $ - |
| | 120 | hr | | $ - | $ 50.00 | $ 6,000.00 | | | | $ - |
| **Additional Fire/Smoke Dampers** | 7 | ea | | $ 3,666.00 | | $ - | | | | $ - |
| | 10.5 | hr | | $ - | $ 50.00 | $ 525.00 | | | | $ - |
| | | | | $ - | | $ - | | | | $ - |
| | | | | $ - | | $ - | | | | $ - |
| | | | | $ - | | $ - | | | | $ - |
| | | | | $ - | | $ - | | | | $ - |
| | | | | $ - | | $ - | | | | $ - |
| **DIRECT Sub-contractor's** | **TOTALS** | | | $ 56,679.00 | | $ 19,525.00 | R | Total (Rental) | | |
| | | | | | | | O | Total (Owned) | | |

PROPOSAL/ESTIMATE FOR CONTRACT MODIFICATION

DATE: 11/1/02

NAVFAC 4330/43 (8/88)

CONTRACT, TITLE: Naval Post Graduate School Bldg 245

CONTRACT NO: N62474-C-3035

ROICC OFFICE:

DESCRIPTION: UpGrade Chiller to 40 Ton

PRIME CONTRACTOR'S WORK

| | | | | | | Revisions/Comments |
|---|---|---|---|---|---|---|
| 1. | Direct Materials | | | | | |
| 2. | Sales Tax on Materials | % of line 1 | % | | | |
| 3 | Direct Labor | | | | | |
| 4. | Insurance, Taxes, and Fringe Benefits | % of line 3 | % | | | |
| 5. | Rental Equipment | | | | | |
| 6. | Sales Tax on Rental Equipment | % of line 5 | % | | | |
| 7. | Equipment Ownership and Operating Expenses | | | | | |
| 8. | SUBTOTAL (add lines 1 - 7) | | | | | |
| 9 | Field Overhead | 10.00% of line 8 | % | | | |
| 10. | SUBTOTAL (Add Lines 8 & 9) | | | | | |

Prime Remarks:

SUB-CONTRACTOR'S WORK

| | | | | | | Revisions/Comments |
|---|---|---|---|---|---|---|
| 11 | Direct Materials | | | 34969 | | difference) 15-40 |
| 12. | Sales Tax on Materials | 2535% of line 11 | 7.25% | 2535 | | |
| 13. | Direct Labor | | | | | |
| 14. | Insurance, Taxes, and Fringe Benefits | % of line 13 | % | | | |
| 15. | Rental Equipment | | | — | | |
| 16. | Sales Tax on Rental Equipment | % of line 15 | % | — | | |
| 17. | Equipment Ownership and Operating Expenses | | | — | | |
| 18. | SUBTOTAL (add lines 11 - 17) | | | | 37504 | |
| 19. | Field Overhead | 10.00% of line 18 | 10 % | 3750 | | |
| 20. | SUBTOTAL (add lines 18 & 19) | | | | 41,254 | |
| 21. | Home Office Overhead | 3.00% of line 20 | 3 % | 1238 | | |
| 22 | Profit | 15 % of line 20 | 15 % | 6188 | | |
| 23 | SUBTOTAL (Add Lines 20 - 22) | | | | 48680 | |

Sub's Remarks.

SUMMARY

| | | | | | |
|---|---|---|---|---|---|
| 24. | Prime Contractor's Work (from line 10) | | | | |
| 25. | Sub-contractor's Work (from line 23) | | | | |
| 26. | SUBTOTAL (add lines 24 & 25) | | | | |
| 27. | Prime Overhead on sub-contractor | 5.00% of line 25 | % | | |
| 28. | Prime's Home Office Overhead | 3.00% of line 24 | % | | |
| 29. | Prime's Profit | % of line 26 | % | | |
| 30. | SUBTOTAL (add lines 26 - 29) | | | | |
| 31. | Prime Contractor's Bond Premium | % of line 30 | % | | |
| 32. | TOTAL COST (Add Lines 30 & 31) | | | | |

Estimated time extension and justification

Prime Contractor name: WestCoastContractor

Sub-contractor name: Johnson Plumbing

Signature & Title of preparer

[signature] Johnson, Owner

Date 11/1/02

S/N 0105-LF-005-6900

## INSTRUCTIONS FOR PREPARING PROPOSAL/ESTIMATE FOR CONTRACT MODIFICATION

All Contract Modification Proposals shall be addressed to the Resident Officer in Charge of Construction. Proposals must clearly state the conditions and scope of the modification and shall be accompanied by a breakdown of cost, as indicated. Lump sum costs will not be accepted in either the prime or sub-contractor's breakdown of direct cost. The total cost for labor, material, and equipment rental (or ownership) for each item shall be transferred to the corresponding item on the front of this form. At the contractor's option, the overhead rates printed on the front of this form may be used for proposals under $ 500,000 in lieu of detailed itemized estimates of overhead costs. The proposal should also include a request for an extension of time, in calendar days, only if overall completion of contract is impacted by the proposed modification. The contractor shall not proceed with any of the work included in the modification prior to receipt of an executed modification of contract (SF30).

BREAKDOWN OF DIRECT COSTS Contract No. N62474-C 3035 Date: 11/1/02

| ITEMS OF WORK FOR Prime Contractor | QTY | UNIT | MATERIAL Unit Cost | MATERIAL Total Cost | LABOR Unit Cost | LABOR Total Cost | R/O | EQUIPMENT Days | EQUIPMENT Rate | EQUIPMENT Total |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |
| DIRECT Prime Contractor's TOTALS | | | | | | | R | Total (Rental) | | |
| | | | | | | | O | Total (Owned) | | |

| ITEMS OF WORK FOR Sub-contractor | QTY | UNIT | MATERIAL Unit Cost | MATERIAL Total Cost | LABOR Unit Cost | LABOR Total Cost | R/O | EQUIPMENT Days | EQUIPMENT Rate | EQUIPMENT Total |
|---|---|---|---|---|---|---|---|---|---|---|
| Upgrade 15 Ton chiller to 40 Ton chiller. Includes Specified Control Package. price increase for chiller only no labor | | | 48680 | | | Ø | | | | |
| DIRECT Sub-contractor's TOTALS | | | | 48680 | | | R | Total (Rental) | | |
| | | | | | | | O | Total (Owned) | | |

NAVFAC 4330/43 (Back)

*U.S. Government Printing Office: 1990-704-010/04070 2-1

# Mt. Rose Heating & Air Conditioning Inc.

P.O Box 8779
Reno NV 89507-8779
310 Sunshine Ln
Reno, NV 89502
(775) 329-6384
FAX (775) 329-6502
NV Lic. #32146
CA Lic. #770238

November 4, 2002

West Coast Contractors of Nevada
7785 White Fir St
Reno, NV 89523

Attention: Jim Miller

**RE: EXPANSION TO BUILDING 245 – NAVAL POST GRADUATE SCHOOL MONTEREY, CALIFORNIA**

Dear Jim
Please find the following cost increases per final design drawings.

**ITEM #1**
Revise air handler capacity to 14,000 C.F.M.

| | | |
|---|---|---|
| Additional Equipment Cost | $ 6,217.00 | |
| Additional Labor Cost | 800.00 | (16 man hours) |
| Total Cost | $ 7,017.00 | |
| Field overhead (10%) | 702.00 | |
| Office overhead (3%) | 232.00 | |
| Profit (15%) | 1,193.00 | |
| Total | $ 9,144.00 | |

**ITEM #2**
Increase duct sizes to accommodate larger air capacity.

| | | |
|---|---|---|
| Additional Material | $ 3,627.00 | |
| Additional Labor | 12,200.00 | (244 man hours) |
| Total Cost | $15,827.00 | |
| Field overhead (10%) | 1,583.00 | |
| Office Overhead (3%) | 522.00 | |
| Profit (15%) | 2,690.00 | |
| Total | $20,622.00 | |

**EXPANSION OF BUILDING 245 NAVAL POST GRADUCATE SCHOOL**
**PAGE 2**

**ITEM #3**

Increase capacity of exterior sound attenuators (stainless steel) and rooftop ductwork.

| | | |
|---|---|---|
| Additional cost of S.S. Attenuators | $ 2,400.00 | |
| Additional Duct @ roof | 3,265.00 | |
| Additional Labor | 6,000.00 | (120 man hours) |
| Additional Cost | $11,665.00 | |
| Field overhead (10%) | 1,167.00 | |
| Office overhead (3%) | 385.00 | |
| Profit (15%) | 1,983.00 | |
| Total | $15,200.00 | |

**ITEM #4**

Add seven (7) fire/smoke dampers with accuators.

| | | |
|---|---|---|
| Fire/smoke dampers | $ 3,478.00 | |
| Material | 188.00 | |
| Labor | 525.00 | (10 ½ man hours) |
| Total Cost | $ 4,191.00 | |
| Field overhead (10%) | 419.00 | |
| Office overhead (3%) | 138.00 | |
| Profit (15%) | 712.00 | |
| Total | $ 5,460.00 | |

If you should have any questions please don't hesitate to call.

Respectfully Submitted,

Craig Argall
Estimator
Mt. Rose Heating & Air Conditioning, Inc.

CA/ree

Merritt+Pardini
A Parametrix Company
Architecture
Urban Design
Planning
Interior Design

November 8, 2002

Mr. Mario R. Ramirez, President
West Coast Contractors of Nevada, Inc.
7785 White Fir Street
Reno, NV 89523

Re: **Past Due Amount on WCC Purchase Order 824**
Naval Post Graduate School Building 245 Extension, Monterey, CA
Merritt+Pardini Project 701-4091-002

Dear Mario,

It is disheartening that our relationship has come to the point where I need to put in writing items I would normally entrust to verbal agreements. As you are aware, there was an initial discrepancy in the fees awarded to Merritt+Pardini for the services associated with the NPS Monterey project. Over the past year, you and I have had several conversations trying to resolve these outstanding issues. At the conclusion of each conversation, you made certain promises to me that, to date, have not been fulfilled.

Following is a brief overview of these issues:

1. **Original Proposal**

   I agreed to compromise on the differing opinions of the originally proposed design fees due Merritt+Pardini. In return, you agreed to pay us half the difference, which amounted to $27,250. Merritt+Pardini would attempt to recover its $27,250 during Construction Administration by billing the full amount while expending minimum hours.

2. **Reimbursable Expenses**

   Also, it was clear in our proposal that printing and travel were reimbursable amounts, above and beyond the fee proposal. Additionally, as I have informed you on at least two occasions, we were asked by Jim Miller to not only print all the required sets, but also distribute them from our office. We informed Jim, at each printing, that these costs were NOT covered in our proposal and that normally the Contractor ships all prints from its office. It was, therefore, at your employee's <u>specific</u> request that Merritt+Pardini incurred these additional costs. As I have stated to you in the past, we have not yet been compensated for these additional costs and have been carrying them on our books for more than six months. The sum for this specific activity is approximately $17,000.

1119 Pacific Avenue
Suite 1600
Tacoma, WA 98402
(253) 383-8700
(253) 383-8728 Fax

1000 Lenora St.
Suite 223
Seattle, WA 98121
(206) 622-9450
(206) 622-9462 Fax

Members of
The American
Institute of
Architects

(88) 0

3. **REA Rejected by Navy**

   In addition, we submitted to you an official Request for Equitable Adjustment (REA), which was forwarded to the Navy at its Western Division office in Daly City. As you may recall, this REA was specific to the Specification ultimately required for approval of the design compared to those Specifications outlined in the Request For Proposal. Once again, in our previous conversations I outlined to you that your staff <u>specifically</u> directed us not to submit the Specification, that in our opinion, the Navy was seeking regardless of what was written in the RFP. Once again, as with the printing and shipping costs, we incurred a tremendous amount of unanticipated labor ($20,500) at your company's request. My entire argument to the Navy supporting the REA was brought as a potential benefit to both West Coast and Merritt+Pardini. When you requested that the REA be dropped, I reluctantly agreed under the condition that you and I would come to resolution as to the underlying cause of the initial problem and subsequent restitution.

4. **Construction Administration**

   Per Item 1 above, as part of our discussions to reconcile these fee differences, you agreed that we would provide minimum Construction Administration services, but invoice the originally contracted amount.

5. **Further Architectural Construction Administration Services**

   As of now, we have exceeded our minimum budget for these services. Further Construction Administration requests will be for an additional cost.

6. **Maintenance and Operations Manual**

   We are being required to collect and submit the maintenance and operations manual for the project that will once again cause Merritt+Pardini a great financial expense (estimated cost of $35,000) with no relief from those unanticipated expenses incurred at your company's request. I need to be very clear at this point: We will comply with the most recent request; however, we will NOT submit it until all the items listed above have been thoroughly resolved as per our previous verbal conversations.

My firm shows an outstanding balance of $87,571 on this project as a direct result of decisions your staff has made.

[redacted]

Mr. Mario Ramirez
November 8, 2002
Page 3

Fee Discrepancy Recap

| | | |
|---|---|---|
| 1. | **Original Proposal** | |
| | • Merritt+Pardini's original fee proposal | $294,650 |
| | • WCC Purchase Order No. 824 | -240,150 |
| | • Contract Difference | 54,500 |
| | • Agreed settlement (WCC to pay 1/2 split of $54,500) | $27,250 |
| | • M+P short fall to be recouped during Construction Administration | 27,250 |
| 2. | **Reimbursable Expenses** (to date; includes REA reimb. expenses) | $35,031 |
| 3. | **REA Rejected by Navy** | |
| | • Labor | $20,500 |
| | • Reimbursable Expenses (included in Item 2 above) | +17,000 |
| | | $37,500 |
| 4. | **Construction Administration** | |
| | • Contract amount (includes subconsultant mark-up) | $27,960 |
| | • Minimum CA services budgeted | -5,500 |
| | • Amount to apply against M+P's shortfall of 27,250 (see Item 1) | 22,460 |
| | • Remaining shortfall owed to M+P | $4,790 |
| 5. | **Further Architectural Construction Administration Svs.** (est. cost) | $15,000 |
| 6. | **Maintenance and Operations Manual** (estimated cost) | $35,000 |
| | **Summary of To-Date Costs Owned to Merritt+Pardini** | |
| | • Item 1 - Agreed settlement on original design fees | $27,250 |
| | • Item 2 - Reimbursable expenses due M+P (to date) | 35,031 |
| | • Item 3 - Labor from rejected REA | 20,500 |
| | • Item 4 - Remaining shortfall | 4,790 |
| | **Total To-Date Balance Due Merritt+Pardini** | $87,571 |
| | **Additional Requests** | |
| | • Further Architectural Construction Administration Services (est. cost) | $15,000 |
| | • Maintenance and Operations Manual (estimated cost) | $35,000 |

Once again, I am deeply saddened that our relationship has come to this measure. However, after several fruitless attempts, I do not know how else to get your attention. Therefore, we are requesting $87,571 in compensation to rectify this important matter. The estimated $15,000 for further Construction Administration services and $35,000 to complete the Maintenance and Operations Manual are additional.

I am requesting that you and your management/accounting staff contact my office so we may reach a financial resolution consistent with our previous discussions.

Sincerely,

Scott E. Harm
Principal

cc: Tracy Hieber, WCC
Robert Berman, M+P Managing Principal
Jim Cockerill, M+P Project Manager

[redacted]

3

WEST COAST CONTRACTORS OF NEVADA, INC.

7785 WHITE FIR STREET
RENO, NV 89523-8930
(775) 747-7774
FAX (775) 747-8887

November 22, 2002

Department of the Navy
511 Gardens Road, Building 426
Monterey, CA 93943

Attn: Ms. Kathy Norgaard

Re: Amendment to REA #3 dated October 16, 2002; Reference Foundation Elevation Change

Dear Ms. Norgaard,

In response to your question please consider the following points as to why certain assumptions were made in preparation of the foundation estimate.

1) The elevation on S5 and S6 indicate that the pier cap and grade beams are immediately below S.O.G. / F.F. elevation.
2) Detail 14/S7 indicates that the slab sits directly on the G.B. at the links.
3) a) Detail 8/S7 indicates that the top of pier cap is 12 inches below F.F. elevation.
   b) Detail 8/S7 also establishes the relationship of the top and bottom of the G.B. to the pier cap.
4) Detail 16/S7 again establishes the 12-inch dimension, which is the top of G.B. to the finish floor elevation.
5) Other details such as 10/S7 and 11/S7 reinforce that criteria.
6) Please consider that it took the structural and civil engineers about 24 hours to determine that the design configuration would not work.
7) Please also consider that on a competitive bid we assume that the grades indicated on the plans are reasonably correct.

I hope this response satisfies your question.

Sincerely,

Mario Ramirez – President
West Coast Contractors of Nevada, Inc.

- GENERAL ENGINEERING AND BUILDING -

91

WEST COAST CONTRACTORS OF NEVADA, INC.
7785 White Fir Street • Reno, NV 89523
(775) 747-7774 • FAX (775) 747-8887

Nev. Lic. #25482
Nev. Lic. #38054
Calif. Lic #531739




JOB NAME: [illegible] JOB: #

·ATION: PERIMETER SHEET: 1 OF:

REFERENCE: BY: DATE:

NOV-22-2002 FRI 11:57 AM WEST COAST CONTRACTORS FAX NO. 775 747 8887 P. 03

Nev. Lic. #25486
Nev. Lic. #38064
Calif. Lic. #531759

WEST COAST CONTRACTORS OF NEVADA, INC.
7785 White Fir Street • Reno, NV 89523
(775) 747-7774 • FAX (775) 747-8887




JOB NAME: WHAT WOULD HAVE OCCURED JOB: #

WEST COAST CONTRACTORS OF NEVADA, INC.
7785 White Fir Street • Reno, NV 89523
(775) 747-7774 • FAX (775) 747-8887

Nev. Lic. #25486
Nev. Lic. #38054
Calif. Lic. #531739



JOB NAME: ACTUAL / AS REDESIGNED JOB: #
LOCATION: PERIMETER SHEET: 3 OF:
ERENCE: BY: DATE:

WCC-0

NOV-22-2002 FRI 11:58 AM WEST COAST CONTRACTORS FAX NO. 775 747 8887 P. 05

Nev. Lic #25486
Nev. Lic. #35054
Cal. Lic. #531739

WEST COAST CONTRACTORS OF NEVADA, INC.
7785 White Fir Street • Reno, NV 89523
(775) 747-7774 • FAX (775) 747-8887



JOB NAME: ________ JOB: #________

SHEET: 5 OF: ________

LOCATION: ________ BY: ________ DATE: ________

REFERENCE: ________

WCC

**DEPARTMENT OF THE NAVY**
ENGINEERING FIELD ACTIVITY. WEST
NAVAL FACILITIES ENGINEERING COMMAND
2001 JUNIPERO SERRA BLVD.. 6th FLOOR, SUITE 600
DALY CITY, CALIFORNIA 94014-1976

REFER TO:
4200
Ser 0211AL
4 FEB 03

West Coast Contractors of Nevada, Inc.
ATTN: Mr. Mario Ramirez, President
7785 White Fir Street
Reno, NV 89523

Subj: YOUR REQUEST FOR EQUITABLE ADJUSTMENT #3 UNDER CONTRACT N62474-00-C-3035

Dear Mr. Ramirez:

This responds to your request for equitable adjustment #3 regarding "foundation elevation changes."

You requested an equitable adjustment of $170,767.54 and a twenty-eight (28) day time extension for design and construction impacts allegedly attributable to your postaward determination to place concrete grade beams and pile caps at lower elevations than depicted in the RFP drawings in order to accommodate a handicap access ramp and parking lot adjacent to the building. You assert that the RFP drawings show foundation grade to be one foot below the finish floor, but during the design process this elevation changed to three feet below the finish floor.

Upon review, I find that the need for lower grade beam elevations was not related to an "unforeseen condition" as characterized by your consulting engineers. Moreover, details in the civil and structural RFP drawings depicting a one-foot dimension should not reasonably have been the only basis for pre-award assumptions made for preparation of estimates relating to the foundation work. Instead, the RFP as a whole should have been considered, with other information regarding topography, grading plan, ramp access, building circulation, and building footprint, taken into account in order to properly form assumptions regarding the design and construction of the building foundation. Additionally, I find no government directed changes in any contractually required design commitment or other government directed changes to the scope of work.

It should be noted that this contract was for the design-build of the Building 245 Extension at the Naval Postgraduate School (NPS) in Monterey, California (Project P-189). You were provided with a preliminary design package developed by the Government which consisted of partial design in architectural and engineering disciplines, and material specifications. The contractor was responsible for completion of the final 100% design as set forth in Sections 01112 and 01331 of the contract.

In view of the foregoing, your request for equitable adjustment pertaining to changes in foundation elevations is determined to be without merit and is therefore denied.

Sincerely,

A. T. Lawrence

A. T. LAWRENCE
Contracting Officer

DEPARTMENT OF THE NAVY
ENGINEERING FIELD ACTIVITY, WEST
NAVAL FACILITIES ENGINEERING COMMAND
2001 JUNIPERO SERRA BLVD., 6th FLOOR, SUITE 600
DALY CITY, CALIFORNIA 94014-1976

IN REPLY REFER TO:
4200
Ser 0211AL
4 FEB 03

West Coast Contractors of Nevada, Inc.
ATTN: Mr. Mario Ramirez, President
7785 White Fir Street
Reno, NV 89523

Subj: YOUR REQUEST FOR EQUITABLE ADJUSTMENT #4 UNDER CONTRACT N62474-00-C-3035

Dear Mr. Ramirez:

This letter intends to respond to your request for equitable adjustment #4 dated 5 November 2002.

You requested an equitable adjustment of $114,489 for providing a chiller and air-handling unit with a greater capacity than shown on mechanical drawings included in the preliminary design package developed by the Government.

The preliminary design package contains only five mechanical drawings: M1-Legend and Abbreviations; M2-First Floor Plan; M3-Second Floor Plan; M4-Diagrams; and M-5-Details. Drawings M-1 through M-5 depict a preliminary design for a two-story structure. You contend that, for cost estimating purposes, you relied upon the reference to a 6500 CFM air handling unit in Diagram Number 1 on Sheet M4 ("Heating, Cooling and Ventilating System Diagram"), and a reference to an air cooled chiller (nominal 15 tons) in Diagram Number 3 on M4 ("Chilled Water System Diagram"), but subsequently found it necessary to "upsize" both of these mechanical components to meet the design cooling temperature for the specified loads.

The mechanical drawings provided as part of the preliminary design package do not actually indicate required mechanical components. Instead, the preliminary design drawings show "design intent" only, and you were required to perform independent design to meet the requirements of the RFP. You were required by the RFP to provide a complete, functional, operational and maintainable system in accordance with the specified design criteria that addressed loads and temperature and ventilation requirements.

Ex. 116

Your request for an equitable adjustment is determined to be without merit and therefore is denied.

Sincerely,

A. T. Lawrence

A. T. LAWRENCE
Contracting Officer

AGREED, BUT "NO MORE" PER [illegible]

**Monterey Post Graduate School**
**701-4091-002**

| Line | Phase | Krei Requested | Contractor Approved | Billed | Paid | | Balance Due | |
|---|---|---|---|---|---|---|---|---|
| 1 | Contract | 294,650.00 | 240,150.00 | | | | | |
| 2 | Split Difference | | 27,250.00 | | | | | |
| 3 | Adj Contract | 294,650.00 | 267,400.00 | 267,400.00 | 234,075.54 | 88% | 33,324.46 ? | 33324 |
| 4 | CO #1 | 11,823.00 | 11,823.00 | 11,823.00 | 11,823.00 | 100% | - | |
| 5 | CO #2 | 7,820.00 | 7,820.00 | 7,820.00 | 7,820.00 | 100% | - | |
| 6 | CO #3 | 1,778.00 | 1,778.00 | 1,778.00 | 1,778.00 | 100% | - | |
| 7 | CO #4 | 1,693.00 | 1,693.00 | 1,693.00 | 1,693.00 | 100% | - | |
| 8 | CO #5 | 2,197.00 | 2,197.00 | 2,197.00 | 2,197.00 | 100% | - | |
| 9 | OMSI Manual | 23,000.00 | - | 8,050.00 | | 0% | ~~8,050.00~~ | IN SCOPE |
| 10 | Out of Scope | 3,576.44 | - | 3,576.44 | | 0% | 3,576.44 ??? | 3576 |
| 11 | REA | 20,500.00 | - | 20,500.00 | | 0% | ~~20,500.00~~ | REJECTED BY NAVY |
| 12 | Additional CA | 4,780.00 | - | 4,780.00 | | 0% | 4,780.00 ??? | 4780 |
| 13 | Expenses | 35,000.00 | - | 32,819.07 | | 0% | 32,819.07 | IN SCOPE |
| 14 | **Total** | **406,817.44** | **292,711.00** | **362,436.51** | **259,386.54** | **72%** | **103,049.97** | 41680 |
| 15 | OMSI Manual (effort credited back to Contractor) | | | | | | (8,050.00) | |
| 16 | **Revised Total** | | | | | | **94,999.97** | |
| 17 | | | | | | | (513.46) | |
| 18 | **Revised Total (9/20/05)** | | | | | | **94,486.51** | |

15,311 (handwritten beside lines 4–8)

VOIC PER KBN

(Line 17 Note: In reconciliation of billings, there is a difference of $513.46 between the invoiced billings total previously provided of $94,999.97 and the invoiced amount shown on the interest calculation spreadsheet on page 9 of $94,486.51. For the purposes of this document we are utilizing the lesser amount.)

??? LINE

VS DRIVE <17248>

HARD LINE

"NO MORE AGREEMENT" OWE 33326

LESS VS DRIVE <17248>

16078 MIN

24432 MAX

9/20/20

86

# SETTLEMENT AGREEMENT AND MUTUAL RELEASE
# KREI ARCHITECTURE ADV WEST COAST CONTRACTORS OF NEVADA, INC.

THIS SETTLEMENT AGREEMENT AND MUTUAL RELEASE (this "**Agreement**") is entered into as of March 31, 2006, by and between Krei Architecture, Inc., (fka Merritt+Pardini, Inc.,) a Washington Corporation ("**Krei**"), on the one hand, and West Coast Contractors of Nevada, Inc., a Nevada Corporation ("**West Coast**"), and National Fire Insurance of Hartford ("**Surety**"), on the other hand. Krei, West Coast, and Surety may each be referred to individually as a "**Party**" and collectively as "**Parties**" below.

WHEREAS, the Parties desire to resolve fully and finally any and all claims that have been or might be asserted by the Parties against each other, to the extent such claims arose or would arise out of or in connection with disputed changes that occurred during the project known as Naval Post Graduate School Building Extension 245, Monterey, CA (hereinafter the "**Project**").

WHEREAS, Professional Architectural and Engineering Services for design of the Post Graduate School were provided by Krei to West Coast under West Coast Purchase Order No. 824, dated June 29, 2001 ("the **Purchase Order**").

WHEREAS, Krei contends that West Coast did not pay for all of the services billed by Krei and West Coast disputes Krei's contentions;

WHEREAS, Surety issued its bond number 929199470 ("the **Surety Bond**") in connection with the Project;

WHEREAS, on January 13, 2005, Krei filed a lawsuit against West Coast and Surety in the U.S. District Court, San Jose Division, Case Number C0500205 PVT ("the **Civil Suit**");

WHEREAS, the Parties stipulated to refer the Civil Suit to Arbitration, American Arbitration Association Case Number 74 110 489 05 MAVE ("the **Arbitration**")

WHEREAS, the Parties have now agreed to resolve their disputes and differences, as set forth in the foregoing Recitals, according to the terms and conditions set forth herein,

NOW, THEREFORE, in consideration of the covenants, representations, and warranties contained herein, the parties hereto agree as follows:

1. **Settlement Amount.** Within twenty (20) days of the execution of this Agreement, West Coast agrees to pay Krei Thirty-Six Thousand Dollars and no cents ($36,000.00).

2. **Release and Discharge of Claims.** Each of the Parties, on its own behalf, and on behalf of its representatives, agents, successors, and assigns, hereby irrevocably and unconditionally releases, discharges, and covenants not to sue the other Party or a Party's current or former parent, subsidiary, or affiliate, and current or former directors, officers, managers, shareholders, partners, joint ventures, attorneys, employees, insurance carriers, predecessors, successors, assigns with respect to any and all claims, liens, covenants, grievances, demands, causes of action, obligations, damages and liabilities, known or unknown, anticipated or unanticipated, contingent or non-contingent, arising under federal or state law that each may have against the other relating to: (1) alleged design deficiencies that resulted in construction change orders during the construction phase of the Project; (2) the performance and/or non-performance of Krei with respect to the Contract between Krei and West Coast pertaining to the

Project; and/or (3) amounts claimed due by Krei for Professional Architectural and Engineering Services on the Project.

3. Except with respect to the rights created or expressly reserved pursuant to this Agreement, with respect to the subject matter of the releases set forth in paragraph 2 above, each Party hereto understands and agrees and stipulates that all rights under Section 1542 of the Civil Code of California, except as set forth herein, **ARE EXPRESSLY WAIVED**. Section 1542 of the Civil Code of California provides as follows:

> **"CERTAIN CLAIMS NOT AFFECTED BY GENERAL RELEASE: A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."**

Nothing contained ~~herein~~ In This Section 3 of this Agreement shall waive any rights granted pursuant to this Agreement.

4. **Understanding of this Agreement**: Each Party hereto affirms and acknowledges that each has read this Agreement and all attachments hereto and has had an opportunity to have this Agreement fully explained by counsel of choice, that each fully understands and appreciates the words and terms used in this Agreement and their effect, that this is a full and final compromise, release, and settlement of the matters set forth in the Recitals, and that each signs this Agreement of its own free will. Each Party, or his or her respective attorneys, have carefully and fully reviewed and revised, or have had an opportunity to revise, this Agreement. Accordingly, the normal rule of construction that any ambiguities are to be resolved against the drafting Party shall not be utilized in the interpretation of any of this Agreement. Each Party fully understands that if the facts with respect to which this Agreement is executed are found hereafter to be different from the facts which a Party now believes to be true, that Party expressly accepts and assumes such risk and agrees this Agreement shall be and remain in effect notwithstanding such difference in facts. Except as expressly set forth herein, each Party also expressly (i) waives its rights to rescind any of the foregoing releases and (ii) acknowledges that each of the foregoing releases and waivers is an independent covenant, the consideration for which is the giving of the other releases and waivers. Each Party expressly agrees that the releases and waivers provided for in this Agreement shall be given full force and effect in accordance with each and all of the express terms and provisions of this Agreement. The Parties expressly consent that the releases and waivers provided for in this Agreement shall be given full force and effect in accordance with each and all of the express terms and provisions of this Agreement, including those terms and provisions relating to unknown or unsuspected claims, demands, causes of action, in whatever capacity, in the event of bankruptcy or insolvency, if any, and shall be given the same effect as those terms and provisions relating to any other claims, demands, and causes of action specified in this Agreement.

5. Dismissals/Releases: Upon receipt of the consideration set forth in paragraph 2 of this Agreement, Krei shall do the following:

(a) Krei shall dismiss the Civil Suit; and

(b) Krei shall dismiss its claim in the Arbitration, with prejudice

6. **Attorneys' Fees.** The Parties agree that each side shall bear its own attorney's fees, costs, and expenses, if any.

7. **No Admission of Liability.** By entering into this Agreement, it is understood that Krei is not admitting any wrongful activity.

8. **Confidential Agreement.** The Parties agree to keep the terms and conditions of this Agreement, the negotiations hereof, and any and all actions by the Parties in accordance with this Agreement strictly confidential, and shall not disclose, discuss, or reveal the same to any other persons, entities, or organizations, except to the extent that disclosure is required by law or is expressly agreed to in writing by the Parties. The Parties agree that the facts of this Agreement shall not be disclosed to the general public through a press release, posting on the worldwide web, or any other means, though the Parties may, if asked about their dispute over the Project, respond that the dispute has been amicably resolved. The Parties agree that any disclosure in violation of this Section 8 will constitute a material breach of this Agreement.

9. **Entire Agreement.** Each of the Parties warrants that no promise, inducement, or agreement not expressed herein has been made to them in connection with this Agreement, and that this Agreement constitutes the entire Agreement between the Parties with respect to the subject matter hereof and supersedes all prior agreements and understandings of the Parties in connection therewith. It is expressly understood and agreed that this Agreement may not be altered, amended, modified, or otherwise changed in any respect whatsoever except by an executed written agreement. The Parties hereto agree that they will make no claim, at any time or place, that this Agreement has been orally altered or modified or otherwise changed by oral communication of any kind or character.

10. **Severability.** If for any reason any provision of this Agreement is determined to be invalid, unenforceable, or contrary to any existing or future law to any extent, such provision shall be enforced to the extent permissible under the law and such invalidity, unenforceability, or illegality shall not impair the operation of or otherwise affect those portions of this Agreement which are valid, enforceable, and legal.

11. **Binding Effect.** This Agreement is and shall be binding upon and inure to the benefit of the Parties hereto and their respective affiliates, predecessors, successors, and assigns.

12. **Counterparts.** This Agreement may be signed in one or more counterparts.

13. **Governing Law.** This Agreement shall be construed and enforced pursuant to the laws of the State of ~~Washington.~~ California

14. **Venue.** In the event a dispute arises under this Agreement, the Parties consent to the exclusive jurisdiction of the federal and/or state courts of Washington.

*Version: March 29, 2006*
*March 29, 2006*

15. **Warranties Re Absence of Prior Assignment of Claims**: The Parties hereto warrant and represent to each other that they have not assigned, transferred, conveyed, or granted or purported to assign, transfer, convey, or grant to anyone any cause of action, demand, debt, liability, account, obligation or any right that any Party to this Agreement may have against the other which arise out of the disputes and/or the facts, events, transactions, and occurrences alleged or that might have been alleged in connection with the disputes set forth in the Recitals. In the event any third Party brings an action against any Party to this Agreement relating to and/or arising from any matter set forth in the Recitals claiming and/or contending that to be an assignee of any Party to this Agreement ("Assignee"), the Party who purportedly assigned the claim and/or right to the Assignee shall indemnify, defend, and hold harmless the Party against who the Assignee brings the claim from and against the matters asserted in the Assignee's claim.

16. **Waiver**: No provision hereof may be waived unless in writing and signed by the Party benefited by the waiver. Waiver of any one provision herein shall not be deemed to be a waiver of any other provisions herein. This Agreement may be modified or amended only by written Agreement executed by all of the Parties.

17. **Paragraph Headings**: Paragraph Headings are for the convenience of the Parties only and shall not be considered in construing or interpreting this Agreement.

18. **Further Assurances**: Each of the Parties hereto agrees to execute such other and further agreements and writings as may be necessary to effectuate the intent of this Agreement.

19. **Time is of the Essence**: With respect to the time requirements set forth in this Agreement, time is expressly declared to be of the essence.

20. **Facsimile Signatures**: This Agreement may be executed and transmitted by facsimile, in which event, the transmittal of an executed copy of this Agreement by facsimile shall have the same force and effect as the hand delivery to the recipient of the original of this Agreement, duly executed in ink by the party to be charged.

*(the remainder of this page has been intentionally left blank)*

SIGNATURE PAGE – SETTLEMENT AGREEMENT AND MUTUAL RELEASE

IN WITNESS WHEREOF, the Parties have caused their duly authorized representatives to execute this Agreement as of the date first mentioned above.

**CLIENT**

West Coast Contractors of Nevada, Inc.

By [signature]

Title President

Date April 6, 2006

**COMPANY**

Krei Architecture, Inc.

By [signature]

Title President

Date May 31, 2006

**SURETY**

National Fire Insurance of Hartford

By [signature]

Title Senior Surety Claims Counsel

Date MAY 3, 2006

[initials] Parties agree that Krei is released from providing OMSI Manual

[initials] Parties agree that Krei file shall be made available for review by West Coast in event of need for supporting their dispute with the Navy.

*Version: March 29, 2006*
*March 29, 2006*

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| WEST COAST CONTRACTORS OF NEVADA, INC., | ) | |
| Plaintiff, | ) | No. 05-1121C |
| v. | ) | (Chief Judge Damich) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**PLAINTIFF'S ANSWERS TO INTERROGATORIES AND RESPONSE TO THIRD REQUEST FOR PRODUCTION OF DOCUMENTS**

Plaintiff, West Coast Contractors of Nevada, Inc., by and through undersigned counsel, Shulman, Rogers, Gandal, Pordy & Ecker, P.A. hereby files its Answers to Interrogatories and Third Request for Production of Documents propounded by Defendant the United States.

**GENERAL OBJECTIONS**

A. The word usage and sentence structure may be that of the attorney assisting in the preparation of these responses and does not necessarily purport to be the precise language of Plaintiff.

B. The information and/or documents supplied, produced or identified in these responses is that currently available to Plaintiff, unless privileged, and Plaintiff reserves the right to file supplemental responses and/or documents should additional or different information become available through discovery or otherwise.

C. Plaintiff objects to these requests to the extent that they impose any obligation on it that is not required by applicable law. Plaintiff further objects to providing any answers that are protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or doctrine.

D. Plaintiff objects to these requests to the extent that they are not reasonably calculated to lead to the discovery of admissible evidence and may be deemed overly broad, unduly burdensome, duplicative and/or cumulative.

E. Plaintiff expressly reserves the right to object to the admissibility at trial of any and all responses and/or documents identified herein.

F. Plaintiff expressly reserves the right to withhold from producing/identifying any and all documents previously provided to Plaintiff by the other parties to this litigation during the course of discovery.

**INTERROGATORY RESPONSES**

1. For the "Paving" claim alleged in paragraphs 7 and 8 of your complaint, identify all cost components of this claim and explain how you calculated the value of this claim at $73,466.36.

**ANSWER NO. 1:** See the attached NAVFAC 4330/43 - PCO #8, dated May 28, 2004 attached hereto as Exhibit A.

2. For the "Relocation of Fire Riser" claim alleged in paragraphs 18 and 19 of the complaint, identify all cost components of this claim and explain how you calculated the value of this claim at $6,375.22.

**ANSWER NO. 2:** See the attached NAVFAC 4330/43 – Relocation of Fire Riser in (E) Bldg 245 attached hereto as Exhibit B.

3. For the "Increased Design Costs" claim alleged in paragraphs 20 through 27 of the complaint, identify all cost components of this claim and explain how you calculated the value of this claim at $37,500.

**ANSWER NO. 3:** The value of this claim was calculated using the increased design costs as assessed by West Coast's design firm, Merritt + Pardini. As evidenced by the letter attached hereto as Exhibit C, Merritt + Pardini charged West Coast an additional $37,500 in fees for its services resulting from the increase in design work necessitated by the government's refusal to give 100% final design approval as required by the contract.

4. For the "Use Of Native Soil" delay claim alleged in paragraphs 28 through 31 of the complaint, identify all cost components of this claim and explain how you calculated the value of this claim at $81,422.48. In addition, identify the dates of delay to the critical path and the critical path activities that were delayed.

**ANSWER NO. 4:**

1. Identify all cost components of this claim and explain how you calculated the value of the claim at $81;422.48
    a. See the attached NAVFAC 4330/43 REA-05-Differing Site Conditions, Governments Untimely Response, dated May 24, 2004, attached hereto as Exhibit D.

2. Dates of Delay
    a. See the attached NAVFAC 4330/43 REA-05-Differing Site Conditions, Governments Untimely Response, and dated May 24, 2004, attached hereto as Exhibit D at page 2
        i. 3/14/02 – 4/09/02
            1. 19 Work Days
            2. 27 Calendar Days

3. Delayed Critical Path Activity Dates
    a. Refer to the attached schedule summary from OnTrack (also attached as part of Exhibit D).
        i. Activity and specifics are located on schedule compact disc previously produced.
            1. Pre-delay dates per schedule NPS 5
                a. Activity 1770 Sub-grade Bldg. Pad, Start 3/15/02

2. Post delay dates per schedule NPS 6
    a. Activity 1770 Sub-grade Bldg. Pad, Start 5/8/02

5. For the "Fire Alarm System" delay claim alleged in paragraphs 32 through 37 of the complaint, identify all cost components of this claim and explain how you calculated the value of this claim at $59,033.24. In addition, identify the dates of delay to the critical path and the critical path activities that were delayed.

<u>ANSWER NO. 5</u>:

1. Identify all cost components of this claim and explain how you calculated the value of the claim at $59,033.24
    a. See the attached NAVFAC 4330/43 REA Fire Alarm Subcontractor Charge, attached hereto as Exhibit E.

2. Dates of Delay
    a. See the attached NAVFAC REA-05-Differing Site Conditions, Governments Untimely Response, and dated May 24, 2004, Exhibit E at page 2
        i. 10/29/02 – 1/06/03
        ii. 46 work days
        iii. 63 calendar days

3. Delayed Critical Path Activity Dates
    a. Refer to the attached schedule summary from OnTrack, also attached as part of Exhibit E.
        i. Activity and specifics are located on schedule compact disc previously produced.
            1. Pre-delay dates per schedule NPS 2
                a. Activity 2950 Rough-in Fire Alarm 1st floor, Start 10/17/02 – Finish 10/22/02
                b. Activity 3070 Rough-in Fire Alarm 2nd floor, Start 10/30/02 – Finish 11/04/02
                c. Activity 3170 Rough-in Fire Alarm 3rd floor, Start 11/7/02 – Finish 11/12/02
            2. Post delay dates per schedule NPS 7
                a. Activity 2950 Rough-in Fire Alarm 1st floor, Start 8/12/02 – Finish 1/3/03
                b. Activity 3070 Rough-in Fire Alarm 2nd floor, Start 10/30/02 – Finish 12/31/02
                c. Activity 3170 Rough-in Fire Alarm 3rd floor, Start 11/11/02 – Finish 12/31/02

6. For the "Concrete Repairs" delay claim alleged in paragraphs 38 through 41 of the complaint, identify all cost components of this claim and explain how you calculated the value of this claim at $90,991.71. In addition, identify the dates of delay to the critical path and the critical path activities that were delayed.

**ANSWER NO. 6:**

1. Identify all cost components of this claim and explain how you calculated the value of the claim at $90,991.71
    a. See the attached NAVFAC 4330/43 REA Concrete Suspension of Work, attached hereto as Exhibit F.

2. Dates of Delay
    a. See the attached NAVFAC REA-05-Differing Site Conditions, Governments Untimely Response, dated May 27, 2004, Exhibit F at page 2, 1/29/02 – 3/14/02 dates are incorrect
        1. Dates per claim letter June 14, 2005 are correct at:
            a. Shutdown Delay 6/5/02 – 6/27/02
                i. 17 Work Days
                ii. 23 Calendar Days
            b. Lost Crew Delay of three weeks
                i. 15 Work Days
                ii. 21 Calendar Days

3. Delayed Critical Path Activity Dates
    a. Refer to the attached schedule summary from OnTrack, also attached hereto as part of Exhibit F.
        ii. Activity and specifics are located on schedule compact disc previously produced
            1. Critical path per schedule NPS 7
                a. Activity 1970 remove shear wall forms – 1st floor., Start 5/29/02 – Finish 5/29/02
            2. Critical path successor per schedule NPS 7
                a. Activity 2370 erect structural beams – 2nd floor, Start 7/12/02 – Finish 7/25/02

7. For the "Notice to Proceed No. 3" delay claim alleged in paragraphs 42 through 45 of the complaint, identify all cost components of this claim and explain how you calculated the value of this claim at $81,478.99. In addition, identify the dates of delay to the critical path and the critical path activities that were delayed.

**ANSWER NO. 7:**

1. Identify all cost components of this claim and explain how you calculated the value of the claim at $81,478.99
    a. See the attached NAVFAC 4330/43 REA Construction Delay (Design), attached hereto as Exhibit G.

2. Dates of Delay
    a. See the attached NAVFAC REA-05-Differing Site Conditions, Governments Untimely Response, and dated May 27, 2004, Exhibit G at page 2, 1/29/02 – 3/14/02
        1. 33 Work Days
        2. 45 Calendar Days

3. Delayed Critical Path Activity Dates
    a. Refer to the attached schedule summary from OnTrack, also attached as part of Exhibit G.
        i. Activity and specifics are located on schedule compact disc previously produced
            1. Critical path per schedule NPS 3
                a. Activity 1670 Drill and Place Caissons, Start 1/16/02 – Finish 1/24/02
            2. Critical path successor per schedule NPS 3
                b. Activity 1680 Excavate Footing and Grade Beams, Start 1/24/02 – Finish 1/28/02

I SOLEMNLY AFFIRM UNDER THE PENALTIES OF PERJURY THAT THE CONTENTS OF THE FOREGOING PAPER ARE TRUE TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

Date: 1/9/2007

Mario Ramirez, President
West Coast Contractors of Nevada, Inc.

**RESPONSE TO THIRD REQUEST FOR PRODUCTION OF DOCUMENTS**

1. All documents used to calculate the values of the claims as set forth in your responses to interrogatory nos. 1 thorough 7 above.

**RESPONSE NO. 1:** See attached documents and documents previously produced.

2. The hard drive for the computer containing West Coasts' job cost journals and job labor journals referenced in the letter from William Davis to Michael O'Connell dated November 3, 2006.

**RESPONSE NO. 2:** West Coast is unable to locate the referenced hard drive. West Coast had previously attempted to access the hard rive and it did not work. However, despite diligent and repeated searches for the hard drive, West Coast has been unable to locate the hard drive in question for some time.

Respectfully submitted,

SHULMAN, ROGERS, GANDAL,
PORDY & ECKER, P.A.

By: William C Davis III /with permission KED
William C. Davis, III
11921 Rockville Pike, Third Floor
Rockville, Maryland 20852
(301) 230-5200
Counsel for West Coast Contractors
of Nevada, Inc.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing Plaintiff's Answers to Interrogatories and Response to Defendant's Third Request for Production of Documents was sent via hand delivery, this 10th day of January 2007 to:

Michael N. O'Connell, Attorney
Commercial Litigation Branch Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530

William Davis

G:\110\West Coast\rsps. to US's 3rd RPD.doc

# EXHIBIT A

MAY-28-2004 FRI 10:21 AM WEST COAST CONTRACTORS FAX NO. 775 747 8887 P. 02

PROPOSAL/ESTIMATE FOR CONTRACT MODIFICATION
Modified form NAVFAC 4330/43 (8/88)

Date:

CONTRACT TITLE:
Design/Build Naval Postgraduate School Bldg 245 Extension

CONTRACT NO: N62474 -C- 3035
PCO NO:8

ROICC OFFICE
NAVAL POSTGRADUATE SCHOOL, MONTEREY

Work Site:

DESCRIPTION:
additional effort by WCC for civil and landscaping services to address impacts per PCO#8 sketch.
no design fees approved, required additional time from WCC staff to layout, survey, and construct

| PRIME CONTRACTOR'S WORK | | | | | Revisions/Comments |
|---|---|---|---|---|---|
| 1. Direct Materials | | | $6,819.00 | | |
| 2. Sales Tax on Materials | % of line 1 | 0.00% | $0.00 | | |
| 3. Direct Labor | | | $17,757.70 | | |
| 4. Insurance, Taxes, and Fringe Benefits | % of line 3 | 0.00% | $0.00 | | Included in labor rate |
| 5. Rental Equipment | | | $7,278.72 | | |
| 6. Sales Tax on Rental Equipment | % of line 5 | 0.00% | $0.00 | | |
| 7. Equipment Ownership and Operating Expenses | | | $0.00 | | |
| 8. SUBTOTAL (add lines 1 - 7) | | | | $31,855.42 | |
| 9. Field Overhead | 10% of line 8 | 10.00% | $3,185.54 | | |
| 10. SUBTOTAL (Add Lines 8 & 9) | | | | $35,040.96 | |

Prime's Remark

| SUB-CONTRACTOR'S WORK | | | | | |
|---|---|---|---|---|---|
| 11. Direct Materials | | | $23,676.12 | | |
| 12. Sales Tax on Materials | % of line 11 | 0.00% | $0.00 | | |
| 13. Direct Labor | | | $7,080.00 | | |
| 14. Insurance, Taxes, and Fringe Benefits | % of line 13 | 0.00% | $0.00 | | |
| 15. Rental Equipment | | | $0.00 | | |
| 16. Sales Tax on Rental Equipment | % of line 15 | 0.00% | $0.00 | | |
| 17. Equipment Ownership and Operating Expenses | | | $0.00 | | |
| 18. SUBTOTAL (add lines 11 -17) | | | | $30,756.12 | |
| 19. Field Overhead | 10% of line 18 | 0.00% | $0.00 | | |
| 20. SUBTOTAL (Add Lines 18 & 19) | | | | $30,756.12 | |
| 21. Home Office Overhead | 3% of line 20 | 0.00% | $0.00 | | |
| 22. Profit | % of line 20 | 0.00% | $0.00 | | |
| 23. SUBTOTAL (Add Lines 20 - 22) | | | | $30,756.12 | |

Subcontractor's Remark

| SUMMARY | | | | | |
|---|---|---|---|---|---|
| 24. Prime Contractor's Work (from line 10) | | | $35,040.96 | | |
| 25. Sub-contractor's work (from line 23) | | | $30,756.12 | | |
| 26. SUBTOTAL (Add Lines 24 & 25) | | | | $65,797.08 | |
| 27. Prime Overhead on Sub-contractor | 5% of line 25 | 5.00% | $1,537.81 | | |
| 28. Prime's Home Office Overhead | 3% of line 24 | 3.00% | $1,051.23 | | |
| 29. Prime's Profit | % of line 26 | 7.00% | $4,605.80 | | |
| 30. SUBTOTAL (Add Lines 26 - 29) | | | | $72,991.91 | |
| 31. Prime Contractor's Bond Premium | % of line 30 | 0.65% | $474.45 | | |
| 32 TOTAL COST (Add Lines 30 & 31) | | | | $73,466.36 | |

Estimated Time Extension and Justification
extended construction time by 3days

Prime Contractor Name: West Coast Contractors of Nevada, Inc.
Sub-Contractor Name: AHBL

Signature & Title of Preparer:

Date:

S/N 0105-LF-005-6820

## INSTRUCTIONS FOR PREPARING PROPOSAL/ESTIMATE FOR CONTRACT MODIFICATION

All Contract Modification Proposals shall be addressed to the Resident Officer in Charge of Construction. Proposals must clearly state the conditions and scope of the modification and shall be accompanied by a breakdown of cost, as indicated. Lump sum costs will not be accepted in either the prime or su-contractor's breakdown of direct cost. The total cost for labor, material, and equipment rental (or ownership) for each item shall be transferred to the corresponding item on the front of this form. At the contractor's option, the overhead rates printed on the front of this form may be used for proposals under $500,000 in lieu of detailed itemized estimates of overhead costs. The proposal should also include a request for an extension of time, in calendar days, only if overall completion of contract is impacted by the proposed modification. The contractor shall not proceed with any of the work included in the modification prior to receipt of an executed modification of contract (SF30).

BREAKDOWN OF DIRECT COSTS Contract No.: N62474-00-C-3026 Date: ______

| ITEMS OF WORK FOR Prime Contractor | QTY | UNIT | MATERIAL Unit Cost | MATERIAL Total Cost | LABOR Unit Cost | LABOR Total Cost | R/O | EQUIPMENT Days | EQUIPMENT Rate | EQUIPMENT Total |
|---|---|---|---|---|---|---|---|---|---|---|
| Additional Survey Time Per PCO-8 | | | | $ - | | $ - | | | | $ - |
| Superintendent | 20 | hrs | | $ - | $ 65.00 | $ 1,300.00 | | | | $ - |
| Quality Control | 20 | hrs | | $ - | $ 55.00 | $ 1,100.00 | | | | $ - |
| Foreman | 20 | hrs | | $ - | $ 60.02 | $ 1,200.40 | | | | $ - |
| Survey Crew (2-men) | 60 | hrs | $ 1.25 | $ 75.00 | $ 85.00 | $ 5,100.00 | | | | $ - |
| subsistance (2-men) | 3 | day | $ 350.00 | $ 1,050.00 | | $ - | | | | $ - |
| Administrative | 4 | hr | | $ - | $ 35.00 | $ 140.00 | | | | $ - |
| | | | | $ - | | $ - | | | | $ - |
| Remove Additional Paving Area | | | | $ - | | $ - | | | | $ - |
| Foreman | 12 | hrs | | $ - | $ 60.02 | $ 720.24 | | | | $ - |
| Operator (2ea) | 24 | hrs | | $ - | $ 58.52 | $ 1,404.48 | | | | $ - |
| Laborer | 12 | hrs | | $ - | $ 42.68 | $ 512.16 | | | | $ - |
| Truck Driver | 12 | hrs | | $ - | $ 32.51 | $ 390.12 | | | | $ - |
| Pick-up | 12 | hrs | | $ - | | $ - | | 12 | $ 10.00 | $ 120.00 |
| Excavator | 12 | hrs | | $ - | | $ - | | 12 | $ 110.00 | $1,320.00 |
| Roller | 12 | hrs | | $ - | | $ - | | 12 | $ 40.00 | $ 480.00 |
| Blade | 12 | hrs | | $ - | | $ - | | 12 | $ 61.21 | $ 734.52 |
| Loader | 12 | hr | | $ - | | $ - | | 12 | $ 75.00 | $ 900.00 |
| Dump Fees | 300 | cy | $ 2.00 | $ 600.00 | | $ - | | | | $ - |
| | | | | $ - | | $ - | | | | $ - |
| Place Base Rock @ Additional Paving | | | | $ - | | $ - | | | | $ - |
| Buy Baserock | 360 | tn | $ 14.15 | $ 5,094.00 | | $ - | | | | $ - |
| Foreman | 20 | hrs | | $ - | $ 60.02 | $ 1,200.40 | | | | $ - |
| Operator (3ea) | 60 | hrs | | $ - | $ 58.52 | $ 3,511.20 | | | | $ - |
| Laborer | 20 | hrs | | $ - | $ 42.68 | $ 853.60 | | | | $ - |
| Truck Driver | 10 | hrs | | $ - | $ 32.51 | $ 325.10 | | | | $ - |
| Pick-up | 20 | hrs | | $ - | | $ - | | 20 | $ 10.00 | $ 200.00 |
| Blade | 20 | hrs | | $ - | | $ - | | 20 | $ 61.21 | $1,224.20 |
| Roller | 20 | hrs | | $ - | | $ - | | 20 | $ 40.00 | $ 800.00 |
| Loader | 20 | hrs | | $ - | | $ - | | 20 | $ 75.00 | $1,500.00 |
| | | | | $ - | | $ - | | | | $ - |
| | | | | $ - | | $ - | | | | $ - |
| | | | | $ - | | $ - | | | | $ - |
| | | | | $ - | | $ - | | | | $ - |
| | | | | $ - | | $ - | | | | $ - |
| DIRECT Prime Contractor's | TOTALS | | | $ 6,819.00 | | $17,757.70 | R | Total (Rental) | | $7,278.72 |
| | | | | | | | O | Total (Owned) | | |

| ITEMS OF WORK FOR Sub-contractor | QTY | UNIT | MATERIAL Unit Cost | MATERIAL Total Cost | LABOR Unit Cost | LABOR Total Cost | R/O | EQUIPMENT Days | EQUIPMENT Rate | EQUIPMENT Total |
|---|---|---|---|---|---|---|---|---|---|---|
| AHBL | | | | $ - | | $ - | | | | $ - |
| Principle | 18 | hr | | $ - | $130.00 | $ 2,340.00 | | | | $ - |
| Project Engineer | 30 | hr | | $ - | $ 85.00 | $ 2,550.00 | | | | $ - |
| Drafter | 6 | hr | | $ - | $ 65.00 | $ 390.00 | | | | $ - |
| | | | | $ - | | $ - | | | | $ - |
| Remove Additional Paving | | | | $ - | | $ - | | | | $ - |
| End Dumps | 24 | hr | | $ - | $ 75.00 | $ 1,800.00 | | | | $ - |
| | | | | $ - | | $ - | | | | $ - |
| Additional Prime Coat | 10118 | sf | $ 0.09 | $ 910.62 | | $ - | | | | $ - |
| | | | | $ - | | $ - | | | | $ - |
| Additional Paving | 10118 | sf | $ 2.25 | $22,765.50 | | $ - | | | | $ - |
| | | | | $ - | | $ - | | | | $ - |
| | | | | $ - | | $ - | | | | $ - |
| | | | | $ - | | $ - | | | | $ - |
| | | | | $ - | | $ - | | | | $ - |
| | | | | $ - | | $ - | | | | $ - |
| | | | | $ - | | $ - | | | | $ - |
| | | | | $ - | | $ - | | | | $ - |
| DIRECT Sub-contractor's | TOTALS | | | $23,676.12 | | $ 7,080.00 | R | Total (Rental) | | |
| | | | | | | | O | Total (Owned) | | |

NAVFAC 4330/43 (Back)

# EXHIBIT B

PROPOSAL/ESTIMATE FOR CONTRACT MODIFICATION — Date:
Modified form NAVFAC 4330/43 (8/88)

CONTRACT TITLE: Design/Build Naval Postgraduate School Bldg 245 Extension
CONTRACT NO: N62474 -C- 3035
PCO NO:
ROICC OFFICE: NAVAL POSTGRADUATE SCHOOL, MONTEREY
Work Site:
DESCRIPTION: Relocate Fire Riser in (E) Bldg 245

| PRIME CONTRACTOR'S WORK | | | | | Revisions/Comments |
|---|---|---|---|---|---|
| 1. Direct Materials | | | $48.00 | | |
| 2. Sales Tax on Materials | % of line 1 | 0.00% | $0.00 | | |
| 3. Direct Labor | | | $1,190.00 | | |
| 4. Insurance, Taxes, and Fringe Benefits | % of line 3 | 0.00% | $0.00 | | Included in Labor Rates |
| 5. Rental Equipment | | | $0.00 | | |
| 6. Sales Tax on Rental Equipment | % of line 5 | 0.00% | $0.00 | | |
| 7. Equipment Ownership and Operating Expenses | | | $0.00 | | |
| 8. SUBTOTAL (add lines 1 - 7) | | | | $1,238.00 | |
| 9. Field Overhead | 10% of line 8 | 10.00% | $123.80 | | |
| 10. SUBTOTAL (Add Lines 8 & 9) | | | | $1,361.80 | |

Prime's Remark

| SUB-CONTRACTOR'S WORK | | | | | |
|---|---|---|---|---|---|
| 11. Direct Materials | | | $456.06 | | |
| 12. Sales Tax on Materials | % of line 11 | 7.88% | $35.91 | | |
| 13. Direct Labor | | | $2,457.16 | | |
| 14. Insurance, Taxes, and Fringe Benefits | % of line 13 | 0.00% | $0.00 | | Included in Labor Rate |
| 15. Rental Equipment | | | $435.00 | | |
| 16. Sales Tax on Rental Equipment | % of line 15 | 0.00% | $0.00 | | |
| 17. Equipment Ownership and Operating Expenses | | | $0.00 | | |
| 18. SUBTOTAL (add lines 11 -17) | | | | $3,384.13 | |
| 19. Field Overhead | 10% of line 18 | 10.00% | $338.41 | | |
| 20. SUBTOTAL (Add Lines 18 & 19) | | | | $3,722.55 | |
| 21. Home Office Overhead | 3% of line 20 | 3.00% | $111.68 | | |
| 22. Profit | % of line 20 | 5.00% | $186.13 | | |
| 23. SUBTOTAL (Add Lines 20 - 22) | | | | $4,020.35 | |

Subcontractor's Remark

| SUMMARY | | | | | |
|---|---|---|---|---|---|
| 24. Prime Contractor's Work (from line 10) | | | $1,361.80 | | |
| 25. Sub-contractor's work (from line 23) | | | $4,020.35 | | |
| 26. SUBTOTAL (Add Lines 24 & 25) | | | | $5,382.15 | |
| 27. Prime Overhead on Sub-contractor | 5% of line 25 | 5.00% | $201.02 | | |
| 28. Prime's Home Office Overhead | 3% of line 24 | 3.00% | $40.85 | | |
| 29. Prime's Profit | % of line 26 | 12.00% | $645.86 | | |
| 30. SUBTOTAL (Add Lines 26 - 29) | | | | $6,269.88 | |
| 31. Prime Contractor's Bond Premium | % of line 30 | 1.68% | $105.33 | | |
| 32 TOTAL COST (Add Lines 30 & 31) | | | | $6,375.22 | |

Estimated Time Extension and Justification

Prime Contractor Name: West Coast Contractors of Nevada, Inc.
Sub-Contractor Name: Cocso Fire Protection

Signature & Title of Preparer:

Date: ____________

S/N 0105-LF-005-6980

INSTRUCTIONS FOR PREPARING PROPOSAL/ESTIMATE FOR CONTRACT MODIFICATION

All Contract Modification Proposals shall be addressed to the Resident Officer in Charge of Construction. Proposals must clearly state the conditions and scope of the modification and shall be accompanied by a breakdown of cost, as indicated. Lump sum costs will not be accepted in either the prime or su-contractor's breakdown of direct cost. The total cost for labor, material, and equipment rental (or ownership) for each item shall be transferred to the corresponding item on the front of this form. At the contractor's option, the overhead rates printed on the front of this form may be used for proposals under $500,000 in lieu of detailed itemized estimates of overhead costs. The proposal should also include a request for an extension of time, in calendar days, only if overall completion of contract is impacted by the proposed modification. The contractor shall not proceed with any of the work included in the modification prior to receipt of an executed modification of contract (SF30).

**BREAKDOWN OF DIRECT COSTS** Contract No.: N62474-00-C-3035 Date:

| ITEMS OF WORK FOR Prime Contractor | QTY | UNIT | MATERIAL Unit Cost | MATERIAL Total Cost | LABOR Unit Cost | LABOR Total Cost | R O | EQUIPMENT Days | EQUIPMENT Rate | EQUIPMENT Total |
|---|---|---|---|---|---|---|---|---|---|---|
| Supervision | 4 | hr | | $ - | $ 60.00 | $ 240.00 | | | | $ - |
| QC Manager | 8 | hr | | $ - | $ 55.00 | $ 440.00 | | | | $ - |
| Carpenter | 12 | hr | | $ - | $ 42.50 | $ 510.00 | | | | $ - |
| Drywall | 1 | ea | $ 8.00 | $ 8.00 | | $ - | | | | $ - |
| Paint | 1 | ea | $ 27.50 | $ 27.50 | | $ - | | | | $ - |
| Plastic Sheeting | 1 | ls | $ 12.50 | $ 12.50 | | $ - | | | | $ - |
| | | | | $ - | | $ - | | | | $ - |
| | | | | $ - | | $ - | | | | $ - |
| | | | | $ - | | $ - | | | | $ - |
| | | | | $ - | | $ - | | | | $ - |
| | | | | $ - | | $ - | | | | $ - |
| | | | | $ - | | $ - | | | | $ - |
| | | | | $ - | | $ - | | | | $ - |
| | | | | $ - | | $ - | | | | $ - |
| | | | | $ - | | $ - | | | | $ - |
| | | | | $ - | | $ - | | | | $ - |
| | | | | $ - | | $ - | | | | $ - |
| | | | | $ - | | $ - | | | | $ - |
| DIRECT Prime Contractor's | TOTALS | | | $ 48.00 | | $ 1,190.00 | R | Total (Rental) | | |
| | | | | | | | O | Total (Owned) | | |

| ITEMS OF WORK FOR Sub-contractor | QTY | UNIT | MATERIAL Unit Cost | MATERIAL Total Cost | LABOR Unit Cost | LABOR Total Cost | R O | EQUIPMENT Days | EQUIPMENT Rate | EQUIPMENT Total |
|---|---|---|---|---|---|---|---|---|---|---|
| Relocate Fire Riser | 36 | hr | | $ - | $ 62.02 | $ 2,232.72 | | | | $ - |
| SCH40 6" Pipe | 5 | ft | $ 11.70 | $ 58.50 | | $ - | | | | $ - |
| SCH40 2" Pipe | 42 | ft | $ 2.30 | $ 96.60 | | $ - | | | | $ - |
| Pipe Hangers | 6 | ea | $ 9.00 | $ 54.00 | | $ - | | | | $ - |
| Seismic Bracing | 2 | ea | $ 34.00 | $ 68.00 | | $ - | | | | $ - |
| Firelock Couplings 6" | 10 | ea | $ 12.50 | $ 125.00 | | $ - | | | | $ - |
| Firelock ells 6" | 1 | ea | $ 27.42 | $ 27.42 | | $ - | | | | $ - |
| 125# 2" tee | 1 | ea | $ 5.06 | $ 5.06 | | $ - | | | | $ - |
| 125# 2" ells | 6 | ea | $ 3.58 | $ 21.48 | | $ - | | | | $ - |
| Cores | | | | $ - | | $ - | | 1 | $300.00 | $ 300.00 |
| Engineering | 4 | hr | | $ - | $ 56.11 | $ 224.44 | | | | $ - |
| Scaffolding | | | | $ - | | $ - | | 3 | $ 45.00 | $ 135.00 |
| | | | | $ - | | $ - | | | | $ - |
| | | | | $ - | | $ - | | | | $ - |
| | | | | $ - | | $ - | | | | $ - |
| | | | | $ - | | $ - | | | | $ - |
| | | | | $ - | | $ - | | | | $ - |
| | | | | $ - | | $ - | | | | $ - |
| DIRECT Sub-contractor's | TOTALS | | | $ 456.06 | | $ 2,457.16 | R | Total (Rental) | | $ 435.00 |
| | | | | | | | O | Total (Owned) | | |

NAVFAC 4330/43 (Back)

# EXHIBIT C

RECEIVED
APR 29 2002
WEST COAST CONTRACTORS
RENO OFFICE

Merritt+Pardini
A Parametrix Company
Architecture
Urban Design
Planning
Interior Design

April 24, 2002

Mr. Bert Lawrence
Contracting Officer
Department of the Navy
Engineering Field Activity West
Pacific Plaza
2001 Junipero Serra Boulevard, #600
Daly City, CA 94014-1976

Mr. Mario Ramirez
President
West Coast Contractors of Nevada
7785 White Fir Street
Reno, NV 89523

**Re: Naval Postgraduate School Building 245 Extension (Monterey, CA)**
Request for Equitable Adjustment for Project Funding
Merritt+Pardini Project 701-4091-002

Dear Bert and Mario,

This is our formal Request for Equitable Adjustment (REA) for the above-referenced project. We are requesting payment in the amount of $37,500 for services rendered in January and February 2002. In addition, it is our recommendation that West Coast Contractors (WCC) be compensated for the additional printing and shipping costs they incurred as a result of this discrepancy. They can provide the sum for these charges.

The additional amount requested is for several technical staff members reworking specifications based on comments received from the Navy that, in our opinion, were not consistent with the original requirements of the published Request for Proposal (RFP). In addition, this REA should also include reimbursable expenses incurred by WCC for the printing and shipping of multiple submittals as a secondary result of the specification discrepancies. Our opinion is that both the 100% Redesign and Pre-Final submittals were direct results of the change in requirements as outlined below.

## Background Information

The RFP specified the form of specifications that were provided in the RFP and the form that construction specifications were to take. The following paragraphs are statements taken from the RFP. A photocopy of the applicable section is attached for your reference (Attachment A). Please pay particular attention to the "Prescriptive" specifications and the requirements for the construction specifications.

1119 Pacific Avenue
Suite 1600
Tacoma, WA 98402
(253) 383-8700
(253) 383-8728 Fax

1000 Lenora St.
Suite 223
Seattle, WA 98121
(206) 622-9450
(206) 622-9462 Fax

Members of
The American
Institute of
Architects

*Section 01331, Paragraph c., Specifications reads:*

*(1) There are two types of specifications included in the RFP: (1) Performance specifications containing performance requirements for materials, products and systems which must be met and criteria for verifying compliance (2) Prescriptive Specifications containing specific requirements which describe materials, products, systems, sizes, ratios, fabrications, quality of workmanship, etc.* ***Options are frequently permitted*** *but are limited to those included in the specification.*

*(2) Specifications for construction shall be provided by the Contractor in the Construction Specification Institute (CSI) 16 Division, three part section format. Specifications shall be prescriptive and shall be in compliance with the requirements of the RFP and with those items specifically identified in the accepted proposal.* ***Where*** *manufacturers' brand names, model numbers or other product designations are included in the prescriptive specifications, submit manufacturer's product data indicating compliance with the requirements of the RFP along with the design submittal. The specifications shall list all applicable standards, catalog cuts, samples, shop drawings, test certificates and submittal requirements during construction. Include a Table of Contents.*

## Discussion Points for REA

1. The Navy's own definition of Prescriptive Specifications, as used in paragraph (1) above, includes the phrase "options are frequently permitted," which leaves the option for the production of "non-proprietary" specifications in the general term of Prescriptive Specifications.

2. Paragraph (2) clearly states that the construction specifications shall be prescriptive and shall be in compliance with the RFP. The paragraph continues to state that not only shall the specification be in compliance with the RFP but shall [be in compliance] " . . . with those items **specifically** identified in the accepted proposal." Therefore, if specific manufacturers and model numbers were NOT presented in the accepted proposal, the construction specification would not be required to identify specific manufacturers and/or model numbers.

3. Paragraph (2) also states, "***Where*** *manufacturers' brand names, model numbers or other product designations are included in the prescriptive specifications, submit manufacturer's product data indicating compliance with the requirements of the RFP along with the design submittal.*" The operative word in this requirement is "**where.**" If the RFP required that the construction specifications "**shall**" in <u>all</u> <u>cases</u> include a specific manufacturer's name, etc., then we would have budgeted the time to identify, copy, collate, and bind all the cut sheets ultimately required by Navy personnel for final acceptance. The use of the word "where" appeared to leave to the General Contractor the alternative of when and where to identify specific manufacturers, thus leaving some flexibility to adjust the project construction budget.

[redacted]

4. Finally, the use of the term "Prescriptive" specifications within CSI format is ambiguous. As referenced in Attachment B, the Construction Specification Institute identifies four methods of specifying: descriptive, performance, reference standard, and proprietary. Note there is no definition for "prescriptive" specifications within the referenced CSI guidelines. In addition, as noted in Attachment C, within the Navy's own *A/E Guide*, Section 8.15, Specification Format (Design-Build Projects), "... the Contractor's A-E is required to provide **Proprietary** Specifications to identify the actual products and systems to be used ... " Clearly, given the use of the term "Proprietary" in the Navy's own *A/E Guide*, this indicates a prior knowledge of the term and the implications of such a requirement. It is our position that the contract team specific to this project determined that "Proprietary" was not what was needed in this specific project.

## Conclusion

It is our position that the RFP was ambiguous in its description of the requirements for specifications and used terminology that was inconsistent with the Navy's own practice and of that common in the industry. While we acknowledge that the final product submitted to the Navy met all the requirements of a proprietary specification, this was not the specification outlined in the published RFP nor the specification we budgeted for on this project.

We are therefore requesting remuneration in the sum noted above plus reimbursable costs incurred by WCC for the production and distribution of the submittals that were rejected due to perceived deficiencies in the previously submitted specifications.

As we await your response to this request, we will continue to provide the professional services necessary to support this project until its conclusion. Thank you for your assistance. Please contact me at 253-383-8700 to discuss this matter further.

Sincerely,

Scott E. Harm
Principal

cc: R. Berman
J. Cockerill
M+P Finance

[redacted]

# EXHIBIT D

PROPOSAL/ESTIMATE FOR CONTRACT MODIFICATION
Modified form NAVFAC 4330/43 (8/88)

Date: 5/24/2004

CONTRACT TITLE:
Design/Build Naval Postgraduate School Bldg 245 Extension

CONTRACT NO: N62474 -C- 3035
PCO NO:

ROICC OFFICE
NAVAL POSTGRADUATE SCHOOL, MONTEREY

Work Site:

DESCRIPTION:
REA-05 - Differing Site Conditions, Governments Untimely Response

| PRIME CONTRACTOR'S WORK | | | | | Revisions/Comments |
|---|---|---|---|---|---|
| 1. Direct Materials | | | $8,660.00 | | |
| 2. Sales Tax on Materials | % of line 1 | 0.00% | $0.00 | | |
| 3. Direct Labor | | | $47,730.80 | | |
| 4. Insurance, Taxes, and Fringe Benefits | % of line 3 | 0.00% | $0.00 | | Included in labor rates |
| 5. Rental Equipment | | | $8,375.00 | | |
| 6. Sales Tax on Rental Equipment | % of line 5 | 7.73% | $646.97 | | |
| 7. Equipment Ownership and Operating Expenses | | | $0.00 | | |
| 8. SUBTOTAL (add lines 1 - 7) | | | | $65,412.77 | |
| 9. Field Overhead | 10% of line 8 | 10.00% | $6,541.28 | | |
| 10. SUBTOTAL (Add Lines 8 & 9) | | | | $71,954.05 | |

Prime's Remark

| SUB-CONTRACTOR'S WORK | | | | | |
|---|---|---|---|---|---|
| 11. Direct Materials | | | $0.00 | | |
| 12. Sales Tax on Materials | % of line 11 | 0.00% | $0.00 | | |
| 13. Direct Labor | | | $1,560.00 | | |
| 14. Insurance, Taxes, and Fringe Benefits | % of line 13 | 0.00% | $0.00 | | |
| 15. Rental Equipment | | | $0.00 | | |
| 16. Sales Tax on Rental Equipment | % of line 15 | 0.00% | $0.00 | | |
| 17. Equipment Ownership and Operating Expenses | | | $0.00 | | |
| 18. SUBTOTAL (add lines 11 -17) | | | | $1,560.00 | |
| 19. Field Overhead | 10% of line 18 | 0.00% | $0.00 | | |
| 20. SUBTOTAL (Add Lines 18 & 19) | | | | $1,560.00 | |
| 21. Home Office Overhead | 3% of line 20 | 0.00% | $0.00 | | |
| 22. Profit | % of line 20 | 0.00% | $0.00 | | |
| 23. SUBTOTAL (Add Lines 20 - 22) | | | | $1,560.00 | |

Subcontractor's Remark

| SUMMARY | | | | | |
|---|---|---|---|---|---|
| 24. Prime Contractor's Work (from line 10) | | | $71,954.05 | | |
| 25. Sub-contractor's work (from line 23) | | | $1,560.00 | | |
| 26. SUBTOTAL (Add Lines 24 & 25) | | | | $73,514.05 | |
| 27. Prime Overhead on Sub-contractor | 5% of line 25 | 5.00% | $78.00 | | |
| 28. Prime's Home Office Overhead | 3% of line 24 | 3.00% | $2,158.62 | | |
| 29. Prime's Profit | % of line 26 | 7.00% | $5,145.98 | | |
| 30. SUBTOTAL (Add Lines 26 - 29) | | | | $80,896.65 | |
| 31. Prime Contractor's Bond Premium | % of line 30 | 0.65% | $525.83 | | |
| 32 TOTAL COST (Add Lines 30 & 31) | | | | $81,422.48 | |

Estimated Time Extension and Justification
Governments untimely response resulted in a 26 day delay

Prime Contractor Name: West Coast Contractors of Nevada, Inc.
Sub-Contractor Name: AHBL

Signature & Title of Preparer:

Date:

S/N 0105-LF-005-6900