NO. 05-1121C
(Chief Judge Damich)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

WEST COAST CONTRACTORS OF NEVADA, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

---

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

BRIAN M. SIMKIN
Assistant Director

MICHAEL N. O'CONNELL
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street N.W.
Washington, DC 20530
Tele: (202) 353-1618
Fax: (202) 514-8624

January 25, 2008

Attorneys for Defendant

## TABLE OF CONTENTS


TABLE OF CONTENTS. . . . . . . . . . I

TABLE OF AUTHORITIES. . . . . . . . . . ii

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT. . . . . . . . . . 1

ARGUMENT. . . . . . . . . . 1

I. West Coast's Reliance Upon A Single Sentence In The Contract Is Unavailing. . . . . . . . . . 1

A. The Cases Cited By West Coast Are Distinguishable. . . . . . . . . . 5

II. West Coast Fails To Explain Why The Contract Is Not Ambiguous. . . . . . . . . . 9

III. West Coast Has Waived The Merritt + Pardini Claim. . . . . . . . . . 10

CONCLUSION . . . . . . . . . . 11

# TABLE OF AUTHORITIES

## CASES

Abraham v. Rockwell Intern. Corp.,
326 F.3d 1242 (Fed. Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Blake Construction Co., Inc. v. United States,
987 F.2d 743 (Fed. Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Donahue Electric,
03-1 B.C.A. (CCH) ¶ 32129, VABCA No. 6618, 2002 WL 31927907 (2002).. . . . . . . 8, 9

Grumman Aerospace Corp v. Wynne.,
497 F.3d 1350 (Fed. Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

M.A. Mortenson Co.,
93-3 B.CA. (CCH) ¶ 26189, ASBCA No. 39978, 1993 WL 261019 (1993) . 6, 7, 8

NVT Technologies v. United States,
370 F.3d 1153 (Fed. Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Severin v. United States,
99 Ct. Cl. 435, 442 (1943). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

White v. Edsall Construction Co.,
296 F.3d 1081 (Fed. Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Zinger Constr. Co. v. United States,
807 F.2d 979 (Fed. Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| WEST COAST CONTRACTORS OF NEVADA, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 05-1121C |
| | ) | (Chief Judge Damich) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION
TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Rule 56 of the Rules of the Court of Federal Claims ("RCFC"), defendant respectfully submits this reply to plaintiff's opposition to defendant's motion for partial summary judgment.

## ARGUMENT

### I. West Coast's Reliance Upon A Single Sentence In The Contract Is Unavailing

In its brief, West Coast relies heavily upon the following sentence from contract section 01112, paragraph 1.1.1 (Contractor's Design Responsibility): "The use of the Government's applicable portion of the preliminary design is required, unless it is specifically modified below." West Coast seizes upon this sentence, strips it out of the context provided by the rest of paragraph 1.1.1 and the contract, and argues that it could rely upon the representation upon drawing M-4 of a 15-ton chiller and 6,500 cubic feet per minute (CFM) air handling unit, and representations in the structural drawings of the grade beams sitting just below the finished floor elevation. As we establish below, this reading is inconsistent with the contract as a whole and misapplies the quoted sentence itself.

Paragraph 1.1.1 reads in full:

> This RFP includes a preliminary design package developed by the Government. The preliminary design package consists of partial design in architectural and engineering disciplines, and material specifications. The partial designs are in various stages of developments [sic]. The use of the Government's applicable portions of the preliminary design is required, unless it is specifically modified below. Additional design requirement are contain [sic] in this section of the RFP. The final design developed by the contractor shall combined [sic] the requirements in this section with the preliminary design to produce a complete design package suitable for construction. The material and related specifications define the minimum acceptable quality of the materials and constructions. The contractor is solely responsible for the final design of the facility.

Defendant's appendix (DA) 267.

When it prepared its offer for this design-build contract, West Coast knew that the design package consisted of "partial designs. . . in various stages of development." Id. It also knew that it had to combine these partial designs with the design requirements in the contract to "produce a complete design suitable for construction." Id. Although West Coast was required to use portions of the preliminary design, this paragraph specifically limited that obligation to "applicable portions of the preliminary design. . ." Id.

The contract does not specifically define the term "applicable portions." However, its meaning can be gleaned from the remainder of paragraph 1.1.1. This paragraph describes in general terms a process in which the contractor takes the preliminary design and combines it with the additional design requirements in section 01112 to produce a design suitable for construction. Two portions of this process are mandatory: the contractor must (1) incorporate the additional design requirements in section 01112 and (2) produce a final design suitable for construction. A

third part of the process, using the Government's preliminary design, is mandatory as well, with one important limitation. Each specific portion of the preliminary design is mandatory only to the extent that it is "applicable," meaning that it must be suitable for combination with the section 01112 design requirements to produce a design suitable for construction. Elements of the preliminary design that clashed with the design requirements or were otherwise not suitable for construction were not "applicable" and need not (and could not) be carried into the final design.

Other parts of the request for proposals (RFP) and contract confirm this understanding. When it prepared its offer, West Coast also was aware of note five to amendment four to the RFP, which specifically cautioned offerors that: "The design shown on the drawings included in this solicitation will require significant development based on requirements in Section 01112 before pricing can take place." DA56 (emphasis added). It further stated: "Offerors' attention to design is considered necessary for adequate pricing." Id. (Emphasis added). If West Coast were correct that it is entitled to more money for any portion of the preliminary drawings that could not be used to create a design suitable for construction, but was not specifically told to disregard, note five would be rendered meaningless. There would be no reason to require offerors to perform "significant development" of the preliminary drawings before it priced the work, if it would be entitled to a contract modification for any errors, inconsistencies, or omissions in those drawings.

West Coast ignores amendment four, note five, and instead focuses upon section 01112, paragraph 1.3.2, which provides that "The Design-Build team shall be solely responsible for verifying the existing conditions prior to submitting their design." DA272. This sentence does not negate amendment four, note five, but is fully consistent with it. See Abraham v. Rockwell

Intern. Corp., 326 F.3d 1242, 1251 (Fed. Cir. 2003) ("Under general rules of contract law we are to interpret provisions of a contract so as to make them consistent."). Paragraph 1.3.2 simply means that West Coast, not the Navy, is responsible for verifying existing conditions before submitting its design to the Navy for approval. It does not relieve West Coast of its obligations pursuant to amendment four, note five.

This interpretation of paragraph 1.3.2 is consistent with provisions of the contract cited in our proposed findings and discussed in our opening brief that provided that West Coast was solely responsible for the design. See DPFUF 13, 23, 34. Other provisions of the contract also emphasize that West Coast, not the Navy, was responsible for performing, checking, and verifying the design. See DA270 (section 01112, paragraph 1.1.3, providing that, except for the fire protection system, the Navy's review of West Coast's design "is to check the design for its sole benefit only."); DA325 (section 01331 (Submittal Requirements After Award), paragraph 1.7 (Government Review And Acceptance) at subparagraph a: "The Government's review is to check the design for its sole benefit only.").

Finally, West Coast's reliance upon the "required, unless it is specifically modified below" language in section 01112, paragraph 1.1.1, is also misplaced. As we established above, if a particular portion of the preliminary design was "applicable," that is, it could be combined with the design requirements, it was required, unless specifically modified. The depictions on the drawings of a 15-ton chiller, a 6,500 CFM air handling unit, and grade beams immediately below the slab were not "applicable" because they could not be combined with the design requirements to produce a final design suitable for construction. Because they were not applicable, the Navy was not required to specifically modify them. Indeed, it would have been

impossible for the Navy to have done so without performing the design it was paying West Coast to perform.

A. The Cases Cited By West Coast Are Distinguishable

In its brief, West Coast cites White v. Edsall Construction Co., 296 F.3d 1081 (Fed. Cir. 2002) for the proposition that "'general disclaimers requiring the contractor to check plans to determine project requirements,' cited in the Motion, 'do not overcome the implied warranty, and thus do not shift the risk of design flaws to contractors who follow the specifications.'" West Coast brief at 8 (quoting Edsall, 296 F.3d at 1085). However, the Federal Circuit's ruling in Edsall is not applicable here because it was based upon a finding that the contract did "not clearly alert the contractor that the design may contain substantive flaws requiring correction and approval before bidding. While suggesting the possibility of minor problems in the drawings, this disclaimer did not shift the risk of design flaws to Edsall." Edsall, 296 F.3d at 1086.

In contrast to Edsall, the present RFP alerted offerors that the preliminary design may contain substantive flaws. We discussed these provisions at length in our opening brief and will not repeat them here. See Opening brief at 7-15. However, by way of example, for West Coast's claim relating to the mechanical equipment, West Coast was on notice that the mechanical drawings might contain substantive flaws because of the provisions of amendment four, note five, discussed above, and the depiction on the drawings of a two-story, rather than a three-story, building. DPFUF ¶¶ 15, 18, 31. In addition, section 01112, paragraph 1.11 (HVAC Systems), at paragraph 1.11.1, System Description and Requirements, informed West Coast that the preliminary mechanical drawings "are intended to show design intent only" and that West Coast would have to "perform independent design to meet the requirements of this RFP." DPFUF

¶¶ 22-23. It stated that the contractor must "[p]rovide a complete, functional, operational and maintainable HVAC system." Id. It then set forth detailed performance requirements that the contractor would be required to design the building to meet. DPFUF ¶¶ 24-29. Considering these provisions as a whole, the Navy alerted a reasonably prudent offeror that there might be substantive flaws with the mechanical design.

West Coast also relies upon two board of contract appeal cases in which the board held that the contractor was entitled to an equitable adjustment, even though the contract was design-build. In citing these cases, West Coast is overreaching because the Government is not asking the Court to make a broad ruling that a contractor is never entitled to an equitable adjustment if the contract is design-build. Rather, each case turns upon the specific facts and circumstances. The cases cited by West Coast do not speak to the facts here.

In M.A. Mortenson Co., 93-3 B.CA. (CCH) ¶ 26189, ASBCA No. 39978, 1993 WL 261019 (1993), the board held that the contractor was entitled to an equitable adjustment for the costs of providing increased quantities of structural concrete and reinforcing steel where the contract was design-build and the Government had provided the contractor with 35-percent drawings. The issue decided by the board was similar to that presented here: "whether the Government warranted the adequacy of the information on the Project Drawings (specific sizes and quantities of structural concrete and reinforcing steel) for purposes of proposing on the construction phase of the work." M. A. Mortenson, ¶ 26,189 at 130,367. The board held that the contractor's reliance upon the drawings to calculate its price had been reasonable because the solicitation expressly told proposers that they could do so. Id. The board summarized the relevant portions of the solicitation as follows:

> The Special Instructions to proposers informed them that 'The minimum requirements for the project are stated in the. . . . Project Drawings. These requirements may be used to form the basis for the pricing proposal' (par. 22). Similarly, the Design Criteria stated that 'The following . . . drawings are provided as guidance. These requirements may be used to prepare the proposals' (at I-1). Similarly, the RFP structural calculations represented that four structural systems (alternatives 3, 4, 8 and 9) have been 'investigated and presented as viable alternatives for pricing' (at 1).

Id. (Emphasis added). The board also found that as a result of these provisions, M.A. Mortenson did not retain a designer or architect to review the plans prior to submitting its bid. Id. at 130,365.

Here, the solicitation conveyed the opposite message to offerors. As we stated above and in our opening brief, amendment four, note five, informed West Coast that the preliminary drawings "require significant development based on requirements in Section 01112 before pricing can take place." DA56. The contract also re-emphasized the incompleteness of the design and the total transfer of design risk to West Coast in the sections dealing with the specific trades. E.g., DPFUF ¶¶ 21-23, 34-36. Thus, as a matter of law, West Coast cannot demonstrate that it reasonably relied upon those drawings to price its proposal without significant development of them.

Moreover, unlike the contractor in M. A. Mortenson, West Coast had established a relationship with an architect (Merritt + Pardini) prior to submitting its proposal. See, e.g., DA514, 527 (Merritt + Pardini's price included in West Coast's best and final offer); DA579 (dating Merritt + Pardini's proposal June 6, 2001, 23 days before the award date). Notably, Merritt + Pardini recognized that the change from the two-story building shown on the plans to a three-story building would change the size of the chiller, unless the floor sizes were shrunk so

that the square footage remained unchanged. DPFUF ¶ 73. It further recognized that this change would require "redesigning the building from the ground up." DPFUF ¶ 19. Thus, unlike the contractor in M.A. Mortenson, West Coast cannot demonstrate that it relied upon the RFP drawings not to consult a designer prior to submission of its offer. M. A. Mortenson does not help West Coast's claim.

West Coast also relies upon Donahue Electric, 03-1 B.C.A. (CCH) ¶ 32129, VABCA No. 6618, 2002 WL 31927907 (2002).[1] Donahue does not help West Coast because it is the product of a unique fact pattern not applicable here. First, the Donahue contract had no disclaimer similar to amendment four, note five, and the RFP drawings, at 50-percent, were more developed than those here. Second, the board found that the Government's designer knew that his design would not work with the particular alternate awarded. Nonetheless, he remained silent, "making the plans and specifications defective." Donahue at 158,826. West Coast has made no similar allegation here. Third, the board found that: "[i]n order to speed up the bidding process, the VA deleted the requirement for technical proposals because it did not want to give bidders the time to prepare drawings." Id. at 158,820. By contrast, West Coast had more than three months between the issuance of the drawings on March 19, 2001 and the submission of its best and final offer on June 21, 2001. Compare DA51 and 513. During this time period, it operated with the knowledge provided by amendment four, note five, that the drawings required significant development before pricing could take place.

---

[1] West Coast's quotation to M.A. Mortenson at pages 7 and 9 of its brief ("[s]pecifications included in a design-build contract, however, to the extent specific requirements, quantities are set forth in those specifications, place the risk of design deficiencies on the owner.") is actually a quotation of Donahue, ¶ 32,129 at 158,825-26.

West Coast relies upon the following sentence in Donahue: "[s]pecifications included in a design-build contract, however, to the extent specific requirements, quantities are set forth in those specifications, place the risk of design deficiencies on the owner." Donahue, ¶ 32,129 at 158,825-26. Donahue should be interpreted as limited to its unique facts. The quoted language cannot be a rule of general application, as West Coast suggests. The board cited no precedent in support of this statement, and it is contrary to the analysis prescribed by the Federal Circuit. As we established at pages 8-9 of our opening brief, the determination as to whether a specification is design or performance, and subject to an implied warranty, rests upon the contract as a whole, not upon one discrete piece of information in isolation as West Coast reads Donahue to hold. As the Federal Circuit has explained "'[c]ontracts are viewed in their entirety and given the meaning imputed to a 'reasonably intelligent contractor' acquainted with the involved circumstances, regardless of whether labeled 'design,' 'performance,' or both.'" Blake Construction Co., Inc. v. United States, 987 F.2d 743, 746 (Fed. Cir. 1993) (quoting Zinger Constr. Co. v. United States, 807 F.2d 979, 981 (Fed. Cir. 1986)). Donahue does not take account of this analysis and is, therefore, no help to West Coast.

## II. West Coast Fails To Explain Why The Contract Is Not Ambiguous

At page 16 of our opening brief, we established that the mechanical specification was patently ambiguous because it depicted the 15-ton chiller and the 6,500 CFM air handling unit in the context of a two-story building but the contract required construction of a three-story building. West Coast's architect, mechanical designer, and subcontractor all recognized that the change from a two- to a three-story building would change the chiller size. DPFUF ¶¶ 70-73. Similarly, with respect to the structural claim, we established at pages 16-18 of our opening brief

that the structural drawings were in conflict with the civil drawings and that, to the extent the structural drawings suggested elevations, those elevations were inconsistent with the specific elevations shown on the civil drawings.

West Coast does not respond directly to either of these arguments but alleges that the provisions it relied upon, for example, the 15-ton chiller shown on drawing M-4, were not ambiguous. West Coast brief at 11. While it is true that the depiction of a 15-ton chiller is not ambiguous in and of itself, this is not the test. In analyzing a contract for a patent ambiguity, a court must consider the contract as a whole. NVT Technologies v. United States, 370 F.3d 1153, 1159 (Fed. Cir. 2004). Considering the requirement for a three-story building, it was clear at least to West Coast's designers and subcontractor that the original chiller, shown in the context of a two-story building, would not work. As we stated in our opening brief, West Coast should have inquired about this discrepancy, asking the Navy if it intended to portray the chiller shown in the two-story building as sufficient to cool a three-story building.

III. West Coast Has Waived The Merritt + Pardini Claim

West Coast does not address directly the Government's argument that Severin v. United States, 99 Ct. Cl. 435, 442 (1943) and its progeny bar West Coast's pursuit of a $37,500 claim from Merritt + Pardini. Instead, it contends that because it paid Merritt + Pardini $36,000 to settle their disputes, it is entitled to the same amount from the Government. As we established in our proposed findings and opening brief, as of September 20, 2005, more than two years after project completion, West Coast's internal documents showed that it had paid Merritt + Pardini $259,386.54, but Merritt + Pardini was seeking $406,817.44, a difference of $147,430.90. DPFUF ¶ 97; DA 612. The vast majority of this amount represented disputes between West

Coast and Merritt + Pardini for which no claim has been made against the Navy. DPFUF ¶¶97-98.

West Coast chose to settle the dispute without allocating the $36,000 it paid among the items in dispute. Where a prime contractor has settled disputes with a subcontractor and has made no allocation of amounts attributable to the Government and the prime, there is no basis upon which the Court can make a damages award to the contractor. Grumman Aerospace Corp., 06-1 B.C.A. (CCH) ¶ 33,216 at 164,622, ASBCA No. 48006, 2006 WL 533445 (ASBCA 2006) *aff'd* Grumman Aerospace Corp. v. Wynne, 497 F.3d 1350 (Fed. Cir. 2007).

CONCLUSION

For the foregoing reasons, and for those stated in our opening brief, the Government requests that the Court enter partial summary judgment in favor of the Government.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Brian M. Simkin
BRIAN M. SIMKIN
Assistant Director

s/Michael N. O'Connell
MICHAEL N. O'CONNELL
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
12th Floor
Washington, D.C. 20530
Tele: (202) 353-1618
Attorneys for Defendant

Dated: January 25, 2008

CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of January, 2008, a copy of the foregoing motion for summary judgment was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Michael N. O'Connell